## SIMMS v. SOUTH CAROLINA RAILWAY COMPANY.

1. Where the testimony for the plaintiff, regarded as true, would not authorize a verdict in his favor, a non-suit is proper.

2. In action against a railroad company to recover damages for an injury caused by a bumper, proof of a defective spring to the bumper would not prevent a non-suit, where the evidence failed to show any connection between such spring and the injury.

3. Under the law (*Gen. Stat.*, § 1471) a railroad company of this State may not refuse to receive from a connecting road, and transport, a car with a bumper of an old pattern, not so safe as improved bumpers in use on its own road.

4. Nor does an old style bumper constitute such a peculiar hazard as to require the company to notify its employees of the danger incident to its being coupled as other bumpers are.

5. When it is apparent to the eye that there is not space enough for two cars to be coupled by a man standing between them, the danger of so coupling is obvious, and therefore the company is not bound to warn the coupler.

6. Where the plaintiff fails to make out a case of negligence, the question of contributory negligence does not arise.

Before COTHRAN, J., Barnwell, March, 1886.

The opinion states the case.

*Messrs. G. W. Croft* and *O. C. Jordan*, for appellant, *cited*

18 *S. C.*, 270, 282; 11 *Am. & Eng. R. R. Cas.*, 193; 22 *S. C.*, 93; 25 *Id.*, 53.

*Messrs. Brawley & Barnwell,* contra, *cited* 21 *S. C.*, 468; 45 *Mich.*, 212; 41 *Am. Rep.*, 38; *Gen. Stat.*, § 1471; 21 *S. C.*, 94, 542; 21 *Am. & Eng. R. R. Cas.*, 633, 637.

April 20, 1887.   The opinion of the court was delivered by

MR. JUSTICE McGOWAN.   Jennings A. Owens, a brakeman in the service of the defendant company, was killed in the line of his duty, coupling cars at Langley on January 29, 1884, and this action is brought by his administrator, W. Gilmore Simms, against the company for $10,000 damages.   The complaint alleges that the defendant corporation, unmindful of its duties, negligently placed in the train of cars, to which deceased was assigned to work, freight cars that were not of a safe and approved make, nor provided with safe and approved bumpers and couplings ; and also that they placed in charge of the engine pulling the train an engineer who was careless, incompetent, and unfit to perform the duties of an engineer, &c.   But there was no proof whatever of the latter allegation, and the only question was as to the first, in regard to freight cars "not being provided with safe and approved bumpers and couplings."

The cause was heard by Judge Cothran and a jury.   It appeared that when the deceased met his death he was in the act of coupling to a cab car, in rear of a train, a Georgia Railroad box car, which, as it happened, had "a bumper" of a different pattern from those in use on the South Carolina Railroad, and to which the deceased was accustomed, the difference being that the "bumper" on the South Carolina cars is so made as to allow sufficient space between the cars for the coupler in the act of coupling to stand on the ground ; while those of the Georgia Railroad do not have space enough between the cars to allow the coupler with safety to stand on the ground, but he must get on the "bumper" rail or platform and couple from above.

The judge says: "In this case the proof is that there was a car, with the engineer backing his train, for the purpose of attaching a car, at about the speed of a man walking.   There was a

person on top of the backing train at the time giving the usual signals to the engineer. The deceased stood leaning with his arm upon the end of the car that was to be attached, waiting the coming of the approaching train, and ready to effect a coupling. On the end of the car upon which he leaned, as well as upon the end of the approaching car, was an apron—some other name for it, 'bumper-rim' (called in some of the books 'double-deadwoods'). When these two cars were properly coupled, it was afterwards ascertained, by actual measurement, that the outer space between the aprons or deadwoods or bumper-rims, was nine and a half inches, which, as segments of a circle, come together, or nearly together, at the point of coupling in the centre. It is an apparent fact that one of ordinary height, and weighing 175 pounds, such as the deceased is said to have been, could not have stood within the space between the aprons or "deadwoods" and have received the impact of the approaching car without fatal results of life. According to the testimony of Romley, the plaintiff's witness, and an expert, it could only be done by mounting upon the apron or deadwood of the car to be coupled. Was it the duty of the deceased to have done so? His business was to couple cars. For this he must be assumed to have had fitness. The testimony shows that he had experience. It is contended, however, by the plaintiff that it was negligence in the defendant to use on their road cars of the pattern of the one that was to be attached, because it was of an old, unsafe, and abandoned character. A railroad is not bound to discard cars of an old pattern because the coupling of them to cars of a new pattern is attended with more danger than the coupling of new cars with each other, and *a fortiori*, the railroad would not be authorized in refusing to receive and attach to their trains and transport such cars of an old pattern when delivered to it by other connecting roads, which, under the railroad law of the State, they are bound to take and transport," &c.

Upon the close of the plaintiff's evidence, the defendant moved for a non-suit, upon the ground that the plaintiff had not offered sufficient proof to entitle him to go to the jury, which the judge granted, and the plaintiff appeals to this court upon the following grounds:

"I. Because his honor ruled that there was no evidence tending to show negligence on the part of the defendant, whereas it appears from the testimony of Edward Romley that cars constructed as the proof showed the old Georgia cars to have been, tended to show negligence on the part of the defendant, and his honor erred in not so deciding.

"II. Because the evidence of Edward Romley tended to show that no railroad operated with prudence now used cars such as the car which did the killing was proved to be; such evidence tended to show negligence, and this was a fact belonging exclusively to the jury.

"III. Because it appears from the evidence of Edward Romley that cars constructed as the old Georgia car was shown to have been, were dangerous, unfit, and unsafe to be used on a railroad, and that the manufacture of the same has been discontinued. These facts not only tended to prove negligence, but, if true, were positive and conclusive proof of negligence on the part of the defendant, and therefore should have been submitted to the jury.

"IV. Because it appears from the testimony of A. C. Small that cars made as the old Georgia car was proved to be, were dangerous, and the manufacture of such cars had long since been discontinued. Such facts tended to show negligence on the part of the defendant, and it was error in not submitting the case to the jury.

"V. Because it appeared from the testimony of S. S. Lee that the spring in the rear of the draw-bar was broken; and it further appeared that such break might have been discovered by the exercise of ordinary care on the part of the defendant; that such evidence tended to show negligence on the part of the defendant, which was a question exclusively for the jury, and it was error in not submitting the case to the jury.

"VI. Because, from the evidence of S. S. Lee and W. A. O. McGowan, it appears that the old Georgia car was not a safe and proper car to be coupled, and that the defendant might have known this by exercising ordinary care.

"VII. Because, in reaching the conclusion to grant the nonsuit, his honor held, as a matter of fact, that the cars at the end

where the coupling was made were only nine inches apart, and that it was apparent to any one that it was dangerous to attempt to make the coupling, and hence he granted the non-suit. It is submitted, to make such a deduction the presiding judge necessarily passed upon a question of fact which, in his judgment, showed contributory negligence on the part of the plaintiff's intestate, and in this he erred; for the fact whether the deceased contributed by his negligence to the injury was a question of fact, which, in all cases, must be submitted to the jury.

"VIII. Because, from the testimony, it appeared that the old Georgia car which did the killing was unlike the South Carolina Railway cars upon which plaintiff's intestate was accustomed to work, that it was different in its construction, far more dangerous to couple, and there was no testimony showing that the deceased was warned of the extra hazard in coupling such cars; that such testimony tended to show negligence on the part of the defendant for using such extra hazardous cars, without giving notice to its employees of the extraordinary risks they run in coupling the same. It is submitted that such evidence tended to show negligence on the part of the defendant, and his honor erred in not submitting the case to the jury.

"IX. Because, from the whole testimony, it is manifest that there was evidence which tended to prove, and if uncontradicted did prove, negligence on the part of the defendant; and it was therefore error in his honor deciding that there was no evidence sufficient to go to the jury."

An appeal from an order of non-suit for the want of sufficient evidence is always embarrassing to this court. In actions purely legal we are limited to the correction of errors of law, and are excluded from reviewing the evidence; yet an appeal from an order dismissing a complaint upon the ground that the plaintiff had not proved enough to entitle him to go to the jury, makes it necessary, in one sense, to consider the testimony. In order to prevent confusion in dealing with facts in a law case, this court has more than once endeavored, as far as it could, to define the exact limits of the judge's province, as well as that of the jury. We held in the case of *Hooper* v. *Railroad Company*, 21 *S. C.*, 549: "It is true, as this court has often held, that a non-suit for

want of evidence should not be granted, where there is any evidence to go to the jury, whose exclusive province it is to decide upon the weight of conflicting testimony. But we do not understand that the meaning of this rule is, that every question involving a fact must go to the jury, whether there is or is not proof to support it. If there is no conflicting evidence, and all is on one side, it may be the duty of a judge to direct a non-suit, as it would be a nugatory thing to send such an unsupported case to the jury. (Authorities.) A high authority expresses the principle in this form : 'The judge has to say whether any facts have been established by evidence, from which negligence may be reasonably inferred ; the jurors have to say whether, from these facts, when submitted to them, negligence ought to be inferred. The relevancy of evidence, and whether any exist which tends to prove, or is capable of proving, negligence, is for the court.' Pierce, 312."

It is certainly true that neither the Circuit Judge nor this court can, in a law case, weigh conflicting testimony. But at the same time it is the province of the Circuit Judge, in the first instance, to determine whether a *prima facie* case has been made out ; that is to say, whether, regarding the evidence as true, the case as it stands is such as to authorize the jury properly to find for the plaintiffs. If so, the case should go to the jury. It will be observed however, that the court is still obliged, in one sense, to consider the effect of the evidence—not as to its credibility, but as to its pertinence to the issues made. Now, according to this rule, can we say that the judge committed error of law in the particulars indicated ?

Exception 5 charges that one witness testified that the spring in rear of the draw-bar of the car to be coupled was broken, and that the defendant corporation, with ordinary care, might have known it. We have not, however, been able to find any evidence connecting the alleged defect with the injury, for the infliction of which there was ample cause in the want of sufficient space between the cars for a man, while standing on the ground, to make the coupling safely.

Exceptions 1, 2, 3, 4, 6, and 7 complain that, inasmuch as "the bumper" of the Georgia car to be coupled was of a differ-

ent pattern from those on the South Carolina Railroad, and could not be safely coupled in the same manner in which cars were coupled on that road, such a car was not "a suitable appliance," and its use alone afforded evidence of negligence on the part of the company. In the interest of commerce, our law requires railroad companies "to deliver with due diligence all cars, wholly or partly loaded with freight consigned to points on connecting roads," &c., &c. See section 1471, General Statutes. We cannot, therefore, say that the judge erred in holding that "the railroad would not be authorized in refusing to receive and attach to their train and transport such cars of an old pattern when delivered to it by other connecting roads, which, under the railroad law of the State, they are bound to take and transport."

But it was further urged that if the defendant company were bound to attach and carry the Georgia car, it was nevertheless their duty to give the coupler notice of the extra hazard in making the coupling, and the mere omission to do so was some evidence of "the want of due care" ; and at least the question should have been left to the jury. It is one of the duties of a railroad company "to notify servants of peculiar hazards which are not known or obvious to them, but it is also a rule that employees are presumed to take the natural risks of their employment, and not arising from its negligence." *Couch* v. *Railroad Company*, 22 *S. C.*, 565. The intestate of plaintiff was a car coupler, and as there was no proof that his engagement was limited to coupling cars of the South Carolina Railroad pattern, it must be considered as including all cars which might be rightly carried on his road, and therefore this coupling was within his engagement.

Besides, if the danger was "peculiar," can it be said that it was "not known or obvious" ? The defendant company did not construct the car with the peculiar "bumper," but had it temporarily in their possession under the requirements of the law. What other employee of the ideal thing called the company was likely to know as much about the peculiar construction of the "stranger bumper" as he whose duty it was to couple it to the train ? Assuming that he was competent for his business, and was aware of its dangerous character, it seems strange that

he did not see at a glance that if he attempted to couple stand-ing between the cars, he would be crushed to death. Something must be left to the sense and solution of persons having intelli-gence. We cannot say that the judge committed error of law in holding that, under the circumstances of the case, the absence of notice of peculiar danger in making the coupling was not a breach of the duty of the company to exercise proper care in making such provision for its employees as to enable them to prosecute their work "with a reasonable degree of safety to life and security against injury."

It seems to us that until a *prima facie* case of negligence is made out against the defendant there can be no such question as that of contributory negligence on the part of the plaintiff or his intestate.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.