### SCOTT v. SEABOARD AIR LINE RY.

1. NONSUIT.—There being material evidence tending to show that defendant's carelessness contributed to the death of plaintiff's intestate, nonsuit was properly refused.
2. NEGLIGENCE—MASTER AND SERVANT.—A RAILROAD COMPANY owes its servant due care to prevent injury to him in discharge of his duty from its servants or machinery.
3. ASSUMPTION OF RISKS.—Modification of request as to assumption of risks not prejudicial to defendant.
4. EXCEPTION pointing out no specific error is too general.
5. NEGLIGENCE—MASTER AND SERVANT—RAILROADS.—Request that a railroad company owes its servant no duty except not to wantonly or wilfully injure him, after its servants have seen him or could have seen him, is too restricted.
6. IBID.—CONTRIBUTORY NEGLIGENCE.—If there be no facts in evidence to sustain the plea of contributory negligence, it is not error to refuse to charge the law applicable thereto. Rule for pleading contributory negligence stated.

Before KLUGH, J., Lexington, February term, 1903. Affirmed.

Action by Donie E. Scott, as administratrix of James Daniel Scott, against Seaboard Air Line Railway Co. From judgment for plaintiff, defendant appeals.

*Messrs. Lyles & McMahan, Efird & Dreher* and *E. McC. Clarkson,* for appellants. The former firms cite: *As to the motion for nonsuit:* 65 S. C., 299; 25 Am. & Eng. R. R. Cas., 592; 3 Am. Neg. Cas., 75. *As to assumption of risks:* 65 S. C., 194; 63 S. C., 559. *As to plea of contributory negligence:* Code of Proc., 170, 171, 180, 181, 197. *Defects in form had been waived by plaintiff:* Pom., 2 ed., 658, 661; 47 S. C., 30. *Properly pleaded:* 18 N. Y., 125; 61 S. C., 479; 5 S. C., 353; 6 S. C., 68; 54 S. C., 490; 1 Thomp. on Neg., secs. 370, 390, 689; 1 Ency. P. & P., 854; 58 S. C., 228; 61 S. C., 565, 231, 340; 66 S. C., 246. *If contributory negligence appear from plaintiffs' evidence, it*

*must be considered though not pleaded:* 5 Ency. P. & P., 13; Thomp. on Neg., secs. 367, 369; Pom. Rem., 2 ed., sec. 675; Bus. on Per. Inj., 2 ed., secs. 134, 135, 136, 137, 139; 3 Am. Neg. Cas., 72; 4 Id., 360; 12 Id., 442; 50 S. C., 53; 51 S. C., 159; 42 S. C., 473; 19 S. C., 24; 21 S. C., 497; 23 S. C., 537.

*Messrs W. Boyd Evans, E. M. Thompson* and *L. D. Melton,* contra. The two former cite: *Law as to nonsuits:* 25 S. C., 132; 29 S. C., 317; 42 S. C., 466; 57 S. C., 2; 50 S. C., 37; 55 S. C., 179; 61 S. C., 473; 63 S. C., 376, 559; 44 S. C., 554; 7 S. C., 167. *Duty of railroad to its employee:* 5 Rap. & Mach. Dig., 114; Busw. Per. Inj., sec. 152. *As to headlight:* 9 L. R. A., 164; 2 Am. Neg. R., 634; 3 A. & E. R. R. Cas., 389. *As to signals for trestles:* 65 S. C., 214. *As to signals for public crossing nearby:* 64 S. C., 104; 58 S. C., 70; 52 S. C., 323. *As to lookout:* 61 S. C., 189; 58 S. C., 70; 57 S. C., 205; 52 S. C., 323. *As to assumption of risks:* Con., art. IX., sec. 15; 56 S. C., 446; 61 S. C., 468. *As to contributory negligence, no application here:* 61 S. C., 187, 565; 64 S. C., 494; 23 S. C., 531. *No evidence to support it:* 65 S. C., 543; 63 S. C., 577. *How pleaded:* 51 S. C., 79, 150; 42 S. C., 454; 38 S. C., 208; 35 S. C., 405; 24 S. C., 211; 29 S. C., 319; 32 S. C., 299; 25 S. C., 53; 21 S. C., 497; 23 S. C., 537; 19 S. C., 28. *Answer does not set it up:* 56 S. C., 95; 58 S. C., 228; 59 S. C., 311; 60 S. C., 170; 61 S. C., 345, 482; 65 S. C., 229: 7 Ency., 2 ed., 374, 373; 4 Ency. P. & P., 664. *Alternative or conditional pleading is not permitted:* 36 S. C., 36; 15 S. C., 28; 12 S. C., 8; 5 Ency. P. & P., 11, 12; 1 Id., 777; 5 Id., 12; 38 F. R., 711; 17 Ency., 19; 79 Ky., 164; 104 Ala., 241; 100 Ala., 451; 25 S. C., 192; Pom. Rem., 2 ed., secs. 673, 687.

July 15, 1903. The opinion of the Court was delivered by

MR. CHIEF JUSTICE POPE. This action is directed to the recovery by the plaintiff, in her representative capacity, of

damages for killing the *intestate* by the defendant, on the
30th July, 1901, while such *intestate* was employed as a
watchman over the bridge and trestle work of defendant
over the Congaree River, near the city of Columbia, S. C.
The case was tried before his Honor, Judge Klugh, and a
jury.   The verdict was in favor of. the plaintiff for the sum
of $8,000.   At the close of plaintiff's testimony, defendant
moved for a nonsuit, which motion was denied.   After the
verdict, the defendant moved for a new trial on the grounds
of insufficiency of evidence and that the verdict was excessive.
Motion on both grounds refused.   Judgment having been
duly entered, the defendant then appealed to this Court.   Be-
fore proceeding to a consideration of the grounds of appeal,
we deem it proper to give a brief recital of the pleadings and
testimony.   After a proper allegation as to defendant's lia-
bility for the acts of the late South Bound Railway, the plain-
tiff showed that her husband, the late James Daniel Scott,
at his death was survived by herself as his widow and his
three children, naming each one; that he was employed by
defendant's predecessor corporation as a night watchman
over the Congaree bridge and trestle works adjacent thereto,
setting out that his duties as such watchman required him
to cross backwards and forwards over said bridge and trestle
works of said railway to extinguish any fire that might ap-
pear thereon.   That on the particular night of the tragedy,
train No. 66, while running from the city of Savannah, Geor-
gia, to city of Columbia, in this State, knocked the intestate
from the trestle work on the Lexington side of the Congaree
River, "negligently, carelessly, recklessly and wantonly," in
utter disregard of its duty and the safety of the said night
watchman, without any headlight upon its engine, and with-
out giving any signal or warning by bell, or whistle, or other-
wise of its approach, as was its duty and custom to do, and
without keeping any lookout whatsoever, and without any
prudence or forethought, which the engineer or person in
charge of said engine should have kept upon the track where
they knew said employee was at work, running at a rapid and

reckless rate of speed, whereby the said *intestate* was killed. That his body was found thrown between two rocks, with his neck broken and his ribs were crushed and broken. Not only so, but the complaint further charged that no whistle was sounded or bell rung at the crossing by said railway over the public road near Cayces, S. C., which was about 200 yards of said bridge and trestle. And then followed the usual recitals of the loss in material support, society, &c., caused by the death of the said intestate.

The answer dealt in general denials, except as a second defense it used this language: "It denies each and every allegation of the complaint, and alleges that if the plaintiff's intestate was killed by the locomotive and cars of the defendant, that he contributed thereto by his carelessness and negligence, and this defendant is not liable therefor."

The testimony of the plaintiff tended to show the corporate capacity of the defendant and its employment for some nine months prior to the tragic death of the intestate as said night watchman at a salary of $30 per month; that on the night he was killed, the said intestate was seen with his lamp burning—that is, a lantern with a light burning therein—going to the bridge and trestle work; that intestate was passed on said bridge with his lantern still burning, going in the direction of the Lexington side of said bridge and adjacent trestle works, just before the train No. 66, consisting of an engine and passenger coaches, came upon said trestle work and bridge, on its way to Columbia, S. C.; that said engine was ahead of its schedule time, both on its arrival at the bridge and also on its arrival at the depot in the city of Columbia, S. C.; that said engine had no headlight thereon; that the engineer and fireman on the engine, while on the bridge, were seen with their faces turned to each other in close conversation; that said engine did not slacken its speed on its approach to said bridge and trestle, but was being run at the rate of 50 or 60 miles an hour; that there was no whistle sounded or bell rung either at Cayces or at or near the bridge; that a witness saw the intestate seem to swing

his lantern, and that such barely escaped from death while
on said bridge from the said No. 66 train by jumping on to
a little platform on the bridge, where barrels of water were
constantly kept; that after train No. 66 had passed this wit-
ness, he went across the bridge and trestle works to where
he had seen the night watchman swing his lantern, and at
or near the trestle works he found the lantern, and when he
called out for the watchman he received no reply; that on
the next morning another witness, at about the hour of 6
o'clock, found the remains of the night watchman, with his
neck broken and the whole right side crushed, every rib being
broken; that physician testified that such bruises could have
been and likely were caused by a collision of the bumper near
the cattle guard of the engine with the body of the deceased.
These matters of testimony were before the Circuit Judge
when he refused the motion for nonsuit. The defendant
then offered testimony tending to establish that the engine
had a headlight fully lighted; that the whistle of the engine
was blown near Cayces; that the speed of the train was 20
to 30 miles an hour; that instead of being ahead of time when
the train reached the bridge and trestle, it was a little behind
time, &c. We will now dispose of defendant's grounds of
appeal:

1. Because his Honor erred in refusing, upon motion, to
strike out so much of the testimony of the witness, J. J.
Mims, as included the facts stated by him, that there was a
rule of defendant company which required a signal to be
blown on approaching the bridge across the Congaree River,
because the said testimony was oral testimony as to the
contents of a written instrument, and was hearsay and incom-
petent. J. J. Mims, a witness for the plaintiff, was being cross-
examined by the defendant, and during that cross-examina-
tion had stated that it was a rule of the railway company to
blow the whistle before going on a trestle; but finally ad-
mitted that he had never seen any such rule. Therefore, de-
fendant moved that the testimony of this witness as to a rule
to blow before crossing be struck out. The Court said: "I

don't think there is any need to strike it out.   You may strike it out so much as he said about the rules of the company."   No doubt, the first words of the Circuit Judge were induced by the fact that the witness had just admitted before the jury that he never saw any such rule, and this, too, after he had first stated that there was such a rule.   However, the Judge finally said: "You can strike it out."   We cannot see how the defendant received any prejudice hereby.   This exception is overruled.

2. We will next consider the exceptions as to nonsuit. These are two and five; the appellant abandoned his third and fourth exceptions.   "2. Because upon a motion for a nonsuit his Honor should have held that there was not a scintilla of evidence to show that the deceased was killed by the railroad company's carelessness, and should have granted the motion."   "5. Because, on the motion for a nonsuit, his Honor should have held that if the duty of the defendant towards an employee on its track was that it would do him no harm through negligence, then there was no evidence tending to show negligence on the part of the defendant, as the deceased was not shown to have been in a position of danger; and from his position, as explained by the circumstances, must have been apprised of the approach of the train, and that no other inference could be drawn from the testimony."   We cannot say from our examination of the testimony that there was no material testimony offered by the plaintiff going to show that defendant's carelessness had nothing to do with the death of the night watchman.   Certainly, some of the witnesses for the plaintiff testified to matters which tended to establish this carelessness.   Nor are we impressed with the fifth exception.   We do not think the duty of the railway to its night watchman began and ended with doing him no harm by negligence.   It owed him a positive duty to see that no harm came to him in the discharge of his duty from either defendant's servants or machinery.   Of course, this servant of the company assumed the risks usually inci-

dent to his position as night watchman. But this by no means allowed the defendant railway to jeopardize his life or limb by a disregard of all that caution which the railway should observe for his protection. There was testimony tending to show that the defendant had not discharged due care here, for if the testimony is believed, there was wilfulness and wantonness here. These exceptions are overruled.

4. We will now examine the sixth exception, which is as follows: "6. Because his Honor refused defendant's third request to charge, as follows, to wit: 'An employee of the company, whose duty it is to supervise and keep the track in proper condition, has the right to pass over and along the track for the purpose of performing his duty, but he assumes the risks and dangers incident to a proper and reasonable conduct of the running of the trains,' but qualified it by adding: 'I charge you that. In this matter he assumes the risk that would extend to all lines of employment. It does not mean that a person employed by the railroad company assumes the risks of other employees. Other risks may overtake him, but he assumes the risk of employment. For instance, a man is employed to watch a bridge, and part of his employment requires him to go across that bridge, it makes no difference how high and what risk would be of his falling off the bridge—if he should incur an injury like that, that would be a risk assumed. Where a person is employed, and some other person comes along, an employee of the company, and injures him, he does not assume the risk of other employees,' thereby so restricting the said charge and limiting it to the risk of falling off the bridge; whereas, it is submitted that an employee assumes all the risks and dangers incident to his employment, and, in a case of this kind, he also assumes the risks incident to the running of trains in a proper and reasonable manner, and it was error in his Honor to limit the risk to the aforesaid one source of danger." As will be seen by the language actually used by the Circuit Judge, he did not refuse defendant's third request. He said, "I charge you that." If there

was any mistake made by the Circuit Judge, it was arising from his anxiety that the jury should not fail to understand what was included in the words, "he assumed the risks and dangers, &c." Hence he gave them a practical illustration of these risks incident to employment by supposing the instance of a watchman at a bridge. We do not see that the language of the Circuit Judge here complained of, when taken in connection with its general charge, could injure the defendant. This exception is overruled.

5. We will next refuse to pass upon exception seven because it is too general. "7. Because his Honor refused to charge defendant's seventh request to charge, as follows, to wit: 'A railroad company owes no duty to one on its track, even though it be a watchman, whose duty it is to watch over the track, except not to injure him in a wanton and wilful manner, if its agents have seen him.' " The appellant does not pretend to point out to us in what respect this refusal to charge is erroneous. The exception is overruled.

6. We will now examine the eighth exception, which is as follows: "8. Because his Honor refused to charge defendant's eighth request to charge, as follows, to wit: 'If you find that a train on this defendant's road did strike the deceased and thereby caused his death, you cannot find a verdict for the plaintiff, unless you further find that the agent of the defendant saw him, or should have seen him, and, after seeing him, then allowed its engine to strike him in wantonness and wilfulness." Is not the exception objectionable because it is too restricted? Would not defendant's railway have been liable to plaintiff in damages for killing the *intestate,* and if it had been agreed that the trains would only run on schedule time, or that due notice of the approach of its trains should be given by ringing of the bell on the engine, or sounding the whistle to its engine, or by running its train at a slow rate of speed on its approach to the bridge and trestle? It seems to us that there are other words of liability except that around the requests to charge.

This being so, the Circuit Judge was not required to charge any such restriction of defendant's liability.    This exception is overruled.    .

7.  We will next consider the ninth exception, which is as follows: "9.  Because his Honor refused defendant's ninth request to charge, as follows, to wit: 'If such employee fails to use proper and reasonable care to prevent an accident or injury to himself, and if such lack of care is the proximate cause of the injury, then recovery cannot be had for injury to him, even though the defendant was first negligent,' but qualified it by adding: 'If the injury was caused by deceased's own negligence, and that was the sole cause of the injury, the railroad company could not be held liable,' thereby indicating that the company would be held liable even if the injury was caused by contributory negligence of the plaintiff's intestate."  We think this exception is not well founded.    Even if we accept what the Judge has said at this point alone, there has been no material injury to defendant.    Of course, if the negligence of the plaintiff's intestate caused the injury, there could be no recovery.    But, after a careful review of all the testimony in this cause, we cannot see where any negligence of the intestate is made to appear.    He was where he was bound by his contract as night watchman to be.    There is not a word of the testimony which indicates the slightest negligence on his part.    Such a condition of affairs would have made this question a purely abstract one.    It is no part of the duty of a Judge to charge abstract propositions of law.    This being so, the exception here considered must be overruled.

8.  We will next pass upon the tenth exception, which is as follows: "10.  Because his Honor refused defendant's eleventh request to charge, as follows, to wit: 'In all cases where the servant's want of ordinary care proximately contributes to his injury, he cannot recover, even though the master was guilty of negligence, a negligence of implied duties resting upon him.' "  There is no testimony in this cause to show the positive action of intestate except in the

line of his duty. There is no testimony as to any facts in connection with the intestate from which any inference may be drawn to his prejudice. But the Circuit Judge in his general charge held that if defendant's negligence caused the injury, plaintiff could not recover. But apart from these considerations, there is nothing in this exception to point *wherein* the Judge was in error. This exception is overruled.

9. Lastly, we will consider the eleventh ground of exception, as follows: "11. Because his Honor charged the jury as follows, to wit: 'As I said, the answer of the defendant alleges, if the deceased was killed by the cars, that he was guilty of negligence, and that the defendant is not liable therefor, but the answer does not raise the issue of contributory negligence; but I will say that the railroad company has got a right to come and say that the deceased was negligent and caused his own death, and if they have proven that, the plaintiff could not recover, for a person cannot be guilty of negligence and recover; so, if you find that the deceased was negligent, and the negligence on the part of the deceased was the sole cause of his death, your verdict should be for the defendant,' thereby indicating that the jury could not find for the defendant in this case on the ground of contributory negligence, and thereby indicating to the jury that the answer of the defendant did not set up the plea of contributory negligence." Here is that part of the answer we must consider: "For a second defense: It denies each and every allegation in the said complaint, and alleges that if the plaintiff's intestate was killed by the locomotive and cars of the defendant, that he contributed thereto by his own carelessness and negligence, and this defendant is not liable therefor." There is properly this inquiry just here: What is recognized under the decisions of this State as contributory negligence? In the case of *Cooper* v. *R. R. Co.*, 56 S. C., 95 (decided in 1899), our Supreme Court says: "The best definition of contributory negligence we have seen is the following, from 7 Enc. Law, 371, 2 ed.: 'Contributory negli-

10—67

gence is a want of ordinary care upon the part of a person injured by the actionable negligence of another, combining and concurring with that negligence and contributing to the injury as a proximate cause thereof, without which the injury would not have occurred.' It is thus seen that contributory negligence by a plaintiff can never exist except when the injury has resulted from the negligence of defendant as a concurring proximate cause." *Bowen* v. *R. R.*, 58 S. C., 228; *Easler* v. *R. R.*, 59 S. C., 311, both sustain this definition of contributory negligence. In *Kennedy* v. *R. R.*, 59 S. C., 535, it is said: "Indeed, we may add that the defense of *contributory* negligence, so far from tending to deny or disprove negligence on the part of the defendant, necessarily involves, by the very meaning of the term contributory, an admission of defendant's negligence; but the plaintiff's negligence, combining and concurring with the negligence of defendant, as a proximate cause thereof, has produced the injury complained of. See 7 Ency. of Law (2d edition), at page 371; *Cooper* v. *Railway Co.*, 56 S. C., 91; *Bowen* v. *Ry.*, 58 S. C., 222; *Sims* v. *Ry. Co.*, 26 S. C., 400."

It is the settled law of this State that when contributory negligence is relied upon by defendant, it must be pleaded. To be a good plea, it must be well pleaded, *i. e.,* the defendant must set out or admit its negligence, and seek to avoid its negligence by alleging negligence of the plaintiff as a proximate cause. There must be no alternative or conditional pleading. *Iseman* v. *McMillan,* 36 S. C., 36; *Hammond* v. *R. R.,* 15 S. C., 28; *Childers* v. *Stribling,* 12 S. C., 8. In 5 Ency. Pl. & Pr., at page 12: "*Averment of facts.*—In those States where it is incumbent on the defendant to plead contributory negligence specially, and where the defense cannot be made under a general denial, the *trend of the authorities is that a general averment that the plaintiff was guilty of negligence which contributed to the injury, and that he could have avoided all damage by the exercise of proper care,* IS NOT SUFFICIENT. The acts and defaults constituting such

contributory negligence should be averred." Thus it is manifest that if the defendant intended in the second part of its answer to plead contributory negligence, it was not well pleaded.

But apart from these considerations, the defendants could not ask the Circuit Judge to declare the law of contributory negligence to the jury. The Circuit Judge properly declined to charge the same. Such a charge would have been a declaration of abstract law. There was nothing in the testimony offered either by plaintiff or defendant which showed that the plaintiff was at all negligent, or tended to show his negligence. Judges must adopt their charges so as to cover the issues of fact involved in the case and the law applying thereto. *Mercer* v. *Railway Co.,* 66 S. C., 246. This exception must be overruled.

. It is the judgment of this Court, that the judgment of the Circuit Court be and is hereby affirmed.

MESSRS. JUSTICES GARY, JONES *and* WOODS *concur in the result.*