13319

MOSELEY v. SOUTHERN RAILWAY CO. *ET AL.*

(162 S. E., 95)

194

*Messrs. H. E. DePass* and *F. G. Tompkins,* for appellants,

*Messrs. Nicholls, Wyche & Byrnes,* for respondent,

January 7, 1932.

The opinion of the Court was delivered by MR. ACTING ASSOCIATE JUSTICE JOHN I. COSGROVE.

Action for damages for wrongful death.

The complaint alleged that on March 1, 1927, while plaintiff's intestate, in the nighttime, was walking along a walkway or roadbed (maintained by defendants along and parallel with the railroad company's track and fill leading from Cayce, S. C., to Columbia, S. C., through which there is an opening or cut, and quarry track of another railroad, approximately fifty feet below), by reason of the joint and concurrent neligence, recklessness, carelessness, and wantonness of the defendants in failing to construct and maintain a footbridge across the cut, or a guard rail at said cut, and in constructing and maintaining in the walkway or roadbed a concrete abutment or curb, which was not high enough to prevent a pedestrian from falling, but projected high enough to trip a person and cause one to fall into the cut, and in failing to give a pedestrian any notice, signal, or warning of the existence of the abutment projecting into the walkway or deep cut beyond, plaintiff's intestate, Carlos Rowland Moseley, was tripped by said concrete abutment and fell into the cut and onto the quarry tracks below, crushing his head, bruising his body, and inflicting upon him great injuries, thereby taking his life, to the damage of plaintiff in the sum of $50,000.00.

There was the further allegation in the complaint that the walkway had been used for many years by the employees of the railroad company and the public generally in walking from Cayce to Columbia, with the knowledge and acquiescence of the defendants and without objection from them.

The individual defendants were joined as employees of the Southern Railway Company, whose duties, plaintiff alleged, required, among other things, the maintenance of the walkway adjoining the railroad track and the maintenance and construction of bridges and the approach to bridges on its right-of-way at the point involved in the action.

The defendants filed a joint answer setting up (1) a gen-

eral denial; and (2) the defenses of contributory negligence, recklessness, willfulness, and wantonness.

The case was tried before the late Hon. T. J. Mauldin, Circuit Judge, and a jury at the February, 1930, term of the Court of Common Pleas for Spartanburg County, resulting in a verdict for plaintiff in the sum of $10,000.00 actual damages. From the judgment entered thereon defendants have appealed to this Court.

During the progress of the trial, defendants made motions for a nonsuit and a directed verdict, both of which were refused. The refusal of these motions, with other grounds, constitute the exceptions of this appeal.

As we are of the opinion that the trial Judge erred in his refusal of either or both of these motions, a consideration of the other exceptions is rendered unnecessary.

There were no eyewitnesses to the tragedy. Plaintiff was compelled, therefore, to rely entirely upon circumstantial evidence.

The theory of the plaintiff was that her intestate while on his way by automobile from Charleston to Columbia, at or near Cayce, turned into a blind road from the main highway; that his automobile became stuck in a hole on a spur track of the railroad at that point; and that in endeavoring to get the car out, its battery was run down. Realizing he could not move the car, he determined to go for assistance. That he came down the side track, crossed over the highway which passes through Cayce, and seeing the lights of Columbia in the distance (estimated to be about a mile away) he entered the walkway or path by the side of the railroad tracks of the main line of the Southern Railway, which by its appearance was used by others, and proceeded along this path until he reached the abutment at the cut, described in the complaint, tripped over the same, and fell to his death below.

At the place of the alleged injury and death of plaintiff's intestate, the roadbed of the Southern Railway is built upon a fill, leading from Cayce to the trestle over the Congaree

River by which the main line enters Columbia. Near the Town of Cayce and between it and the Congaree trestle, there is a cut in the fill, known as Guignard's cut, through which runs a quarry track. The walls of the cut are of concrete and are perpendicular, supporting the trestle portion of the Southern's main line passing thereover at a height of about twenty to thirty feet.

The evidence adduced tended to show that beside the track on the fill between Cayce and Guignard's· cut, there was a walkway or path which had been used by the public generally for many years; that such use was an invitation to others to enter and use it; that at the date of the accident there were no signs warning pedestrians not to use the pathway; that in this walkway there was the cut above described, some twenty or more feet deep; that the walls of the cut projected above the walkway about twelve to eighteen inches; and that the cut was unprotected by guard or rail or by light or other warning.

Under the decisions of this Court such testimony, if believed by the jury, was sufficient upon which to base a verdict of negligence. *Hayes v. Railway,* 103 S. C., 522, 88 S. E., 268; *Matthews v. Railway,* 67 S. C., 512, 46 S. E., 335, 65 L. R. A., 286. "The necessity for protection was open and apparent to all." *Hayes v. Railway, supra.*

Under the fundamental law of negligence, however, in order for plaintiff to recover, the burden was upon her to show not only that defendants were negligent, as alleged in the complaint, but that the negligence relied on was the proximate cause ·of the death of plaintiff's intestate. In other words that defendants were guilty of actionable negligence.

The complaint alleged that on the date therein mentioned, in the nighttime, plaintiff's intestate was walking along the walkway, or roadbed, above described, and, by reason of the

negligence above set forth, fell into the cut and met his death.

The vital inquiry arises: Did Moseley, in the nighttime, walk along this path, trip over the unprotected abutment, and fall to his death below?

The burden, of course, was upon plaintiff to prove this essential element in her case; for no matter how negligent defendants may have been in the maintenance of the pathway and cut, unless Moseley was shown by the evidence to have *used* the pathway and to have suffered by reason of the negligence proved, plaintiff has not sustained the burden of proof imposed upon her by the law.

We are fully aware of the rule of this Court that: "In order for this Court to sustain the order of nonsuit, it must be satisfied that the testimony of the plaintiff, when considered in connection with that introduced by the defendant, is susceptible of only one inference, and that inference must be that it fails entirely to sustain the material allegations of the complaint." *Seyle v. Charleston Terminal Co.,* 109 S. C., 99, 95 S. E., 178, 179. And: "Even though a nonsuit should have been granted at the conclusion of plaintiff's testimony, yet, if the deficiency of evidence was supplied either on direct or cross examination of defendant's witnesses, neither a nonsuit nor a directed verdict could be granted at the conclusion of all the testimony." *Eargle v. Sumter Lighting Co.,* 110 S. C., 566, 96 S. E., 909, 911.

A brief review of the testimony on this point, then, becomes necessary.

The undisputed testimony shows, in substance, the following:

Early on the morning of March 2, 1927, the body of Moseley, clothed in a raincoat over street clothes, was found in Guignard's cut. Overhead was the open trestle of the Southern Railroad, supported by concrete abutments at either end. The body was lying on its face with head towards Cayce and feet towards Columbia. It was partially under

the railroad trestle, the ties of which, however, were too close for a person to fall through. There was a fracture at the back of the head, two contused wounds in the head, and bruises on the face and hands. Very little blood was found on the ground beneath the head. While there was no blood on the sleeve of the raincoat, the coat sleeve beneath it was stained with blood. There were no tracks on the pathway nor marks on the abutment. A light snow had fallen in the night. A second path or road from the highway ran down to the cut to the left of the fill.

The automobile of the deceased was also found in the early morning, about three-quarters of a mile from the cut, down a blind road on a side track of the railroad, the other side of Cayce from the cut. Its wheels were stuck and its battery run down. One of its front doors was broken off and lying on the ground with the glass shattered; the upholstery was cut or torn; blood was on the gearshift and the windshield.

There was, in addition, testimony (offered by defendant, but disputed by plaintiff) tending to show from certain appearances and conditions in and about the automobile that a scuffle or struggle may have ensued, in which the deceased or some other person had been injured.

Having in mind the rule governing nonsuits, above stated, the evidence offered by defendant did not help out plaintiff's cause at all.

To our mind, the testimony on this point, with all reasonable inferences therefrom, is lacking in a number of essential particulars. We do not find in the evidence alluded to or in the entire record any testimony or any facts or circumstances tending to show that Moseley at any time during that fatal night made use of the pathway on the fill.

There was an entire absence of testimony going to show the movements of deceased on the night in question or what his condition, mental or physical, may have been. There was no testimony as to how long he had been dead, nor when nor

where he was last seen alive. There were proven no tracks in the path nor marks on the abutement which would have indicated the presence of someone thereabout. The path from the highway to the left of the fill led to the cut, as well as the pathway on the fill. It is true that the lights of Columbia a mile away might have indicated the direction he walked, if it were shown that at some time he was on the path or roadbed. Even if he were at some time on the fill, did he fall off the trestle or trip over the abutment, as asserted by plaintiff?

To sustain the theory of plaintiff, the jury were compelled to presume from the finding of the body in the cut and the disabled automobile three-quarters of a mile away, that the deceased walked from the car, through the Town of Cayce out onto the pathway and tripped over the abutment.

This presumption, however, would have to rest upon several other presumptions, contrary to settled rules of evidence. It would have to be presumed: (1) That at some time that night the deceased was in his automobile at the point where it was found; (2) that, if he were alive at his automobile, he left it and went directly to the pathway on the railroad and did not go into Cayce, across whose main thoroughfare he had to pass in order to get to the fill; (3) that he chose a perilous route over a railroad embankment and trestle, in the nighttime, to seek assistance rather than the safer nearby sources of possible help in the Town of Cayce or even in the Town of New Brookland, he not being a stranger in the neighborhood; (4) that, in view of his wounds, nothing occurred to him in the Town of Cayce before he got on the fill; (5) and, finally, that he was at some time of the night on the fill or trestle.

Meanwhile, the blood on the automobile, the blood on the coat sleeve beneath the raincoat with which the body was clothed, the several wounds on the head, the damaged condition of the automobile, remain unexplained.

The theory of defendants, from the condition of the automobile and its surrounding circumstances, coupled with the position and condition of the body, was that the deceased had met with foul play and either was placed or thrown where he was found to divert suspicion. Indeed, according to the record, such was the first belief of the family of the deceased at the time of the occurrence.

All of these theories, however, are the merest speculation.

This Court has sustained many verdicts based entirely upon circumstantial evidence. We have examined a large number of them. In all, we found at least a starting point, that is, that the deceased by the evidence was put, so to speak, at the place of injury either by reason of the requirements of duty as in the case of an employee (*Tyner v. Ry. Co.,* 149 S. C., 89, 146 S. E., 663; *Thornton v. Ry. Co.,* 98 S. C., 348, 82 S. E., 433; *Eargle v. Sumter Lighting Co., supra; Seyle v. Terminal Co., supra*), or by testimony as to his movements at or before the time he made use of the place of injury. *Key v. Railway Co.,* 144 S. C., 164, 142 S. E., 336; *Woodward v. Railway,* 90 S. C., 262, 73 S. E., 79; *Scott v. Railway,* 67 S. C., 136, 45 S. E., 129; *Sentell v. Ry.,* 70 S. C., 183, 49 S. E., 215.

In the case of *Hayes v. Railway, supra,* relied on by respondent, it appears to have been conceded that the deceased was upon the pathway when he fell into the cut. *Matthews v. Railway, supra,* also relied on by respondent, was decided upon a demurrer. The complaint, however, like the complaint herein, alleged that plaintiff's intestate was walking along the pathway of the railroads at the time of his injury by falling in a cut. The demurrer, of course, admitted that fact. The general denial of defendants in this case, however, put plaintiff to proof of all the material allegations of her complaint, which included proof that her intestate did walk upon the path the night he met his death.

Plaintiff, to our mind, has failed to establish a "starting point" in this case. Whether we reason backward from the

finding of the body in the cut or forward from the finding of the automobile stuck and with its battery run down, we are still in the realm of conjecture that plaintiff's intestate walked along this pathway *and* tripped over the unprotected abutment. There is a total absence of testimony tending to put the deceased at the place of injury before his death.

We are not unmindful of the rule that the verdict of a jury should not lightly be overturned. Especially is this true when the verdict has been approved by the trial Judge who saw and heard the witnesses and measured the probative force and weight of the testimony. Almost the entire experience of the writer of this opinion has been spent in striving to uphold the verdicts of juries. If there is any testimony tending to support the material allegations of the complaint, a nonsuit or directed verdict should not be granted. But, even the scintilla doctrine of evidence rests upon proven facts.

"As declared in *Taylor v. Ry.*, 78 S. C., 556, 59 S. E., 641, a scintilla of evidence is any material evidence which, taken as true, would tend to establish the issue in the mind of a reasonable juror. The law affords no redress for wrongs which exist wholly in the imagination. Verdicts cannot be allowed to rest upon mere surmise, conjecture, or caprice. The law is moved by material evidence, including proven facts and those presumptions which the law recognizes from motives of public policy and as founded in human experience. A Court fails to exercise its high prerogative to administer justice according to law when it permits a verdict to stand which finds no support in the evidence." *Crosby v. Ry.*, 81 S. C., 31, 61 S. E., 1064, 1067.

The fact that an injury may have occurred in one of a dozen ways, of course, would not defeat a plaintiff's right of recovery if the evidence tended to sustain the reasonable probability of the one relied on. In a civil case the law does not require proof to a certainty.

In the instant case, however, the causal connection between defendants' negligence and the injuries to plaintiff's

intestate has not been shown. *Governor v. Railway Co.,* 154 S. C., 113, 151 S. E., 229.

We have given this case most earnest consideration and have carefully searched the record for evidence that would sustain the conclusion of the jury. We are constrained to hold that the evidence was insufficient.

In proper instances the Court will order a directed verdict entered in favor of an appellant under the provision of Rule 27, when it appears that this course should have been taken in the lower Court. When it appears, however, that a plaintiff might be able to supply additional evidence to support the cause of action, the Court will not order a directed verdict in favor of the defendant, but will sustain the motion for nonsuit when one has been made. Such motion was made in this case. Under all the circumstances, we do not think there should be a directed verdict in favor of the appellant, but that the case should be remanded for a new trial that the plaintiff may offer additional evidence in this case, where she had to depend entirely upon circumstantial evidence, if such new evidence may properly be obtained.

It is the judgment of this Court, therefore, that the cause be remanded to the Circuit Court and a new trial granted.

Mr. Chief Justice Blease and Messrs. Justices Stabler and Carter concur.

Mr. Justice Cothran did not participate on account of illness.