## CHICAGO, R. I. & P. RY. CO. v. BARTON.

No. 6058—Opinion Filed June 6, 1916.

(159 Pac. 250.)

**1. Railroads—Accident at Crossing—Proximate Cause of Injury.**

Negligence cannot be based upon the failure of those in charge of a train to ring the bell and sound the whistle, where the plaintiff pleads and proves that, while in a position of safety, he knew the train was approaching.

**2. Evidence — Competency — Knowledge of Facts.**

Where a witness testified that he did not observe or know the speed of the train at the time of the injury, but when urged by counsel testified that in his judgment it was traveling 15 miles an hour or more, held, that the witness, not having observed or knowing the speed of such train, was not qualified to testify with regard thereto.

**3. Railroads — Accidents at Crossings—Speed—Question of Fact.**

Where, in the limits of a town, the speed of a train is not regulated by ordinance, a railway company may run its trains at any rate of speed consistent with the safety of such trains and persons rightfully on its

premises, but this privilege does not give to such company the right to run into a station at an excessive rate of speed in utter disregard of the safety of persons rightfully upon its premises; such speed must be regulated with due regard for the safety of the public. Held, that whether there was excessive speed, and, if so, whether under facts and circumstances of the case such speed constituted negligence, is a question of fact to be determined by the jury.

**4.  Same—Burden of Proof.**

Whether the excessive speed of a train is the proximate cause of an injury is never presumed, but must be established by the evidence.

**5.  Same—Evidence.**

Evidence examined, and held insufficient to support the doctrine of the last clear chance.

**6.  Negligence—Actions—Question for Court or Jury—Constitutional Provision.**

Section 6, article 23 (Williams') Constitution, providing that the defense of contributory negligence shall in all cases whatsoever be a question of fact, and shall, at all times, be left to the jury, does not take from the courts the right to ascertain whether the three necessary elements of primary negligence exist, viz:  (1) The existence of a duty on the part of the defendant to protect the plaintiff from injury;  (2) The failure of the defendant to perform that duty; and (3) Injury to the plaintiff resulting from such failure.

(Syllabus by Rittenhouse, C.)

Error from District Court, Texas County; Frank Mathews, Assigned Judge.

Action by J. P. Barton against the Chicago, Rock Island & Pacific Railway Company. Judgment for plaintiff, and defendant brings error. Reversed and remanded for new trial.

C. O. Blake, R. J. Roberts, W. H. Moore, and J. G. Gamble, for plaintiff in error.

J. S. Harris, Philip J. Breslin, and John L. Gleason, for defendant in error.

Opinion by RITTENHOUSE, C. This action was brought to recover damages for personal injuries received through the alleged negligence of the Chicago, Rock Island & Pacific Railway Company on October 14, 1912, at the station of Tyrone, Okla. The cause was submitted to a jury and resulted in a judgment in favor of plaintiff for $1,500. The acts of negligence relied upon for recovery are numerous, but the questions necessary for a determination of the controversy are: Was there any evidence offered reasonably tending to prove that the defendant was guilty of negligence? It guilty of such negligence, was it the proximate cause of the injury?

It is first alleged that the defendant company caused its train to be run from the whistling post, which was about 160 rods southeast of the depot platform, into the station of Tyrone without causing any whistle to be blown, or bell to be rung, and without giving any warning to the plaintiff of the approach of said train. It is admitted by plaintiff in his petition and also in his evidence that he was standing on the platform, waiting for the arrival of this particular train in order to deliver a package to the mail clerk; that, while so standing on said platform, the engine whistled, whereupon he immediately turned towards the southwest and there observed the train; that he then went a distance of 20 feet into the waiting room, procured the package to be delivered, walked out of the room in a northeasterly direction for the purpose of reaching a point about 50 feet northeast of said waiting room, where the mail car usually stopped; that from the time plaintiff heard said whistle and saw the train, to the time he reached the track and was injured, not more than 15 seconds elapsed. It is apparent, therefore, that the plaintiff knew of the approach of the train within 15 seconds before he was injured, and, knowing of such fact, negligence could not be based upon the failure of the engineer to sound the whistle or ring the bell in order to warn the plaintiff of the approach of said train.

In the case of the M., K. & T. Ry. Co. v. Gilbreath, 49 Okla. 681, 154 Pac. 539, Chief Justice Kane, in discussing a similar question, said:

"It seems to us in such circumstances that negligence cannot be based upon the failure of the engineer to ring the bell or sound the whistle to warn the trackmen of the approach of his train when it was obvious to him that they had knowledge of this fact."

It is next alleged as an act of negligence that defendant company caused said train to be run into the station of Tyrone at a rate of speed in excess of 15 miles per hour, without slowing down or slacking the speed of said train, which rate of speed was greatly in excess of the speed with which said train usually pulled into said station, which it is alleged was 7 miles per hour. The evidence supporting the contention that the train was traveling at an excessive rate of speed, to wit, 15 miles per hour, was given by Tom Davis, who testified as follows:

"Q. Did you observe the speed of the train as it came upon the plaintiff that day?  A. No, sir; I did not, not particularly.  Q. Did you notice it generally, what distance, the rate of speed?  A.  I couldn't state.  Q. How fast was the train going?  In your

judgment, how fast was the train running when you observed it? A. I don't know. My judgment would be— I don't know. Q. Answer. A. My judgment would be that the train was going some place close to 15 miles per hour; maybe more."

To all these questions and answers the defendant objected. The witness had disqualified himself to testify as to the speed of the train. He did not observe at what particular speed the train was traveling, nor could he state the rate of speed; saying that in his judgment he did not know at what rate of speed the train was running at the time of the injury; and finally, after an unusual amount of exertion on the part of counsel for plaintiff, he testified that in his judgment "the train was going some place close to 15 miles per hour, maybe more." This is the only evidence in the record supporting the theory that the train was traveling 15 miles per hour, and this should have been excluded; the answer showing that it was merely a guess on the part of the witness, he having previously admitted that he did not observe the speed of the train. There was evidence by the enginemen that the train was traveling between 10 and 12 miles an hour as it approached the station, and that it was gradually reducing in speed, until it stopped; whether the train was traveling at an excessive rate of speed when it hit the plaintiff is not shown.

There is no contention that the speed of the train was regulated by ordinance, and, in the absence of such regulation, defendant might run its trains at any rate of speed consistent with the safety of such trains, and persons rightfully upon its premises; but the privilege of running its trains at such rate of speed does not give to a railway company the right to run into a station at excessive speed in utter disregard of the safety of persons rightfully upon its premises, but the speed must be regulated with due regard for the safety of the public. Where there is evidence of excessive speed, it is for the jury to say whether, under all the facts and circumstances of the case, such speed constituted negligence. Shearman & Redfield on the Law of Negligence (6th Ed.) 460; 33 Cyc. 901; Struck v. Chicago, M. & St. P. Ry. Co., 58 Minn. 298, 59 N. W. 1022; Thompson v. New York Cent. & H. R. R. Co., 110 N. Y. 636, 17 N. E. 690; Custer v. Baltimore & O. R. Co., 206 Pa. 529, 55 Atl. 1130; Hickey v. New York Cent. & H. R. R. Co., 8 App. Div. 123, 40 N. Y. Supp. 484; Philadelphia & Reading R. Co. v. Long and Wife, 75 Pa. 257.

The fact that the defendant may have run its train into this station at a speed of 15 miles per hour, which was in excess of its customary speed and an accident followed, does not of itself render defendant liable for such injury, unless the speed was either the proximate cause of the injury, or contributed toward it; and that the same was the proximate cause, or contributed toward it, is not to be presumed, but must be established by the evidence. Shearman & Redfield on the Law of Negligence (6th Ed.) 27; Hays v. Michigan Cent. R. R., 111 U. S. 228, 4 Sup. Ct. 369, 28 L. Ed. 410; Pennsylvania R. Co. v. Hensil, 70 Ind. 569, 36 Am. Rep. 188.

The remaining question for determination under this assignment of error is whether or not the running of the train at an alleged excessive speed was the proximate cause of, or contributed to, the injury of plaintiff. Plaintiff had seen the coming of this train, and according to his own admissions, after having observed its approach, left the platform and went into the waiting room for the purpose of procuring certain packages which he intended delivering to the mail clerk, and immediately pushed his way through the crowd to the point where he was injured; this, as he states, all occurring in the space of 15 seconds. Under these circumstances, we are asked to say that the speed of the train was the proximate cause of the injury or contributed thereto. This we cannot do. From the instant plaintiff observed the approach of the train until his injury he was in constant motion, his purpose being to meet the mail car upon its arrival at the usual stopping place; to accomplish which he rapidly proceeded diagonally, through the crowd of people, across the platform to the point where he was struck. The evidence is that he was not standing near, or walking parallel with, the track; and that the engineer did not see him, and did not and could not have known of his danger in time to have stopped the train and avoided the injury, regardless of the rate of speed at which the train ran into the station. It is established by the uncontroverted evidence that, had the train been proceeding at a less rate of speed than that shown by the evidence, still the engineer was powerless to have prevented the injury.

It is further urged that the plaintiff was in a place of peril, and that defendant knew of such peril in time to have avoided injuring him. We have heretofore shown that the injury followed immediately upon the plaintiff reaching a position of peril. Those in charge of the train had the right to assume that the plaintiff, when in a place of safety, would so remain, and would do nothing to place himself in a perilous position. To sustain an action upon plaintiff's

theory it is necessary to show that the party injured was in a place of peril, and that the persons in charge of the train knew he was in such peril in time to have avoided his injury. The evidence in support of this contention is as follows: Mr. G. E. Walker, the engineer, testified, in substance, that he was in charge of the engine that struck the plaintiff; that the whistle was blown at the whistling post, about a half mile from the station; that the bell was rung about the same time; that his first information that some one was in danger was when the fireman shouted; that he had applied the air for the station stop before the fireman shouted; that after a service application of the air the application in the emergency does no good, but he did apply the emergency.

"I did not see Mr. Barton before the train struck him. After I heard Mr. Massey shout, there was nothing I could do to stop the engine that I did not do. * * *"

J. T. Massey, the fireman, testified as follows:

"When I first saw Mr. Barton that morning he stepped out from behind that little side window and started toward the train. I was sitting in the window (on the engine) and began to holler at him. The engine was just west of the depot. The service application of the air had been made before that: I don't know how long it was after I saw Mr. Barton's danger before we struck him. I sat where I could see on that high bench, and I noticed a man come out, and then he stopped and hesitated and reached over like that—I don't know, probably 10 or 12 seconds or some such matter as that. I done just what occurred to me to do. I hollered at him to keep him from being hit. There was nothing else I could do. I had no occasion to shout to him unless I thought he was going to get hurt. I saw the truck. I saw the man reach for—I don't know what he reached for—paper, or something on the truck. In reaching for this package, he didn't stop, but staggered towards the train as though he was dizzy, or something."

This evidence does not bring the case within the doctrine of last clear chance, as announced in A., T. & S. F. Ry. Co. v. Baker, 21 Okla. 51, 95 Pac. 433, 16 L. R. A. (N. S.) 825; Clark v. St. L. & S. F. R. Co., 24 Okla. 764, 108 Pac. 361; Oklahoma City Ry. Co. v. Barkett, 30 Okla. 28, 118 Pac. 350.

There are several acts of negligence alleged which are not supported by the evidence and therefore should not have been submitted to the jury: (1) The failure of the company to have a line or other contrivance on the depot platform to indicate the clearance of the train; (2) failure of the company to have a bell on the engine; and (3) failure of the company to maintain a look-out. It was also alleged as negligence that the company had placed a truck in a position on the platform so that the northeast end of said truck was about 18 inches from the inner rail of the track, and the southwest end was about 5 feet from such rail. There was no evidence that the truck was hit by the train, or that the plaintiff's injury was caused by the truck striking him. The truck was not moved, but remained stationary until after the injury. Wherein the position of this truck constituted negligence, or was the proximate cause of the injury, or contributed thereto, is not shown.

Plaintiff insists that, since the Constitution (section 6, art. 23, Williams' Con.) provides that the defense of contributory negligence shall, in all cases whatsoever, be a question of fact, and shall, at all times, be left to the jury, the courts have not the right to inquire as to whether or not the negligence was the proximate cause of the injury, as this would require a determination of whether the party injured was guilty of contributory negligence. Contributory negligence is an act or omission on the part of the plaintiff, amounting to want of ordinary care, which, concurring or co-operating with the negligent act of defendant, is the proximate cause of the injury complained of, and necessarily presupposes negligence on the part of the defendant. In Scott v. Seaboard Air Line R. R. Co., 67 S. C. 136, 45 S. E. 129, it is said:

"The best definition of contributory negligence we have seen is the following, from 7 Enc. Law, 371 (2d Ed.): 'Contributory negligence is a want of ordinary care upon the part of a person injured by the actionable negligence of another, combining and concurring with that negligence and contributing to the injury as a proximate cause thereof, without which the injury would not have occurred.' It is thus seen that contributory negligence by a plaintiff can never exist except when the injury has resulted from the negligence of defendant as a concurring proximate cause." Louisville, etc., R. Co. v. Sights, 121 Ky. 203, 89 S. W. 132, 28 Ky. Law Rep. 186; Jones v. Charleston, etc., R. Co., 61 S. C. 556, 39 S. E. 758; Simms v. S. C. R. Co., 26 S. C. 490, 2 S. E. 486.

If, therefore, contributory negligence can never exist except where the injury results from the primary negligence of the defendant as a concurring proximate cause, then it becomes the duty of the court to first ascertain if the facts, as disclosed by the evidence, constitute primary negligence; if the essential elements of such negligence are not established, the defense of contributory negligence does not exist and would not be a question of fact for the jury under section 6, supra.

Whether the facts in a given case constitute primary negligence, where the injuries are not willful and intentional, must depend upon whether the three essential elements of negligence are shown, viz: (1) The existence of a duty on the part of the defendant to protect the plaintiff from injury; (2) the failure of the defendant to perform that duty; and (3) injury to the plaintiff resulting from such failure.

The cause should therefore be reversed and remanded for a new trial.

By the Court: It is so ordered.