**CHICAGO, R. I. & P. RY. CO. v. PEDIGO, Adm'r, et al.**

No. 16151—Opinion Filed Feb. 9, 1926.

Rehearing Denied Feb. 8, 1927.

**1. Railroads—Care Due Persons on Track After Discovery.**

It is the duty of the employees of a railroad company in charge of an engine and train, when they observe a person to be in a place of danger, to use ordinary care, commensurate with the conditions, to avoid injury to such exposed person. That such person may have passed into the place of danger on account of his negligence, is not material in determining the liability of the defendant, where the charge is that the employes failed to use reasonable care after discovering the danger of the exposed person.

**2. Same—Last Clear Chance Doctrine Invocable for Licensee or Trespasser.**

The application of the last clear chance doctrine in the trial of a cause renders it immaterial whether the injured party passed on to the premises of the defendant as a licensee or trespasser.

**3. Master and Servant—Railroads — Injury to Person on Tracks—When Verdict for Employe as Joint Defendant Does Not Relieve Railroad of Liability.**

A verdict for an employee of the railroad company who is joined with the latter in an action for tort does not relieve the master from liability as vice principal, where the evidence is such that the jury may have concluded that the negligence of another employe, who was not joined in the action, was the proximate cause of the injury.

**4. Railroads—Recovery for Death of Person on Track—Sufficiency of Evidence.**

Record examined and held, that there is sufficient evidence to support judgment in favor of the plaintiff.

(Syllabus by Williams, C.)

Commissioners' Opinion, Division No. 2.

Error from District Court, Caddo County; Will Linn, Judge.

Action by P. H. Pedigo, as administrator of the estate of B. R. Pedigo, against the Chicago, Rock Island & Pacific Railway Company and Earl Humphreys. Judgment for plaintiff against the Rock Island, and codefendant Humphreys. The Rock Island appeals. Affirmed.

W. R. Bleakmore, A. T. Boys, John Barry, and W. F. Collins, for plaintiff in error.

Ledbetter, Stuart, Bell & Ledbetter and A. G. Morrison, for defendants in error.

Opinion by WILLIAMS, C.  P. H. Pedigo, as administrator of the estate of B. R. Pedigo, commenced his action for damages against the Chicago, Rock Island & Pacific Railway Company, and joined in the action Earl Humphreys, who was in the employ of the railway as a fireman at the time of the accident. The allegations of the petition charging negligence in causing the death of plaintiff's decedent are, in substance:

First, that B. R. Pedigo, the deceased, was walking along on the railway track, where it had been the practice of persons to travel for a long time; that the travel of pedestrians back and forth along the right of way where the accident occurred had been a practice for such a period of time as to charge the railway with notice of such acts; that a well-beaten path had been made by such pedestrians along the track, sufficiently so to give the railway notice of such use; that it was the duty of the railway's employes to maintain lookout for persons who might be using this particular part of the right of way for travel; that the failure of the employes to discharge such duty was the proximate cause of the death of plaintiff's decedent. Second, that the engineer and fireman in charge of the engine and train observed the deceased in a place of danger at such a distance from him, that such employes by the exercise of ordinary care could have avoided colliding with the deceased; that such failure to act on the part of the employes was the proximate cause of the injury.

The defendants filed their separate answers wherein a general denial was made, and included a plea of contributory negligence. The trial of the cause resulted in a judgment in favor of the plaintiff and against the railway company for the sum of $2,500. A verdict was returned in favor of Earl Humphreys, the fireman, who was joined in the action. The railway company has appealed the cause, and seeks reversal here mainly upon the proposition that the evidence of the plaintiff did not show that the plaintiff in error was guilty of negligence. The assignment calls for an examination of the evidence in relation to the acts of negligence as charged by the plaintiff.

The deceased, on the day of the accident, had visited a son at Bridgeport, Okla., a town on the railway lines of the defendant. The deceased started at about 2:30 p. m. to walk from Bridgeport east to his home, a distance of about six miles, along the right of way and track of the defendant. A passenger train of the defendant, in charge of the fireman, who is joined as defendant, and one of the defendant's engineers, collided

with the deceased at a place about 1½ miles east of Bridgeport. There was a public road crossing about one-half mile west of the point where the train collided with the deceased, and another crossing some 200 or 300 yards east of the point where the accident occurred. The engineer testified that he first observed the deceased about one-half mile ahead of the train, walking in an easterly direction between the rails of the track; that the train was then in the vicinity of or near the crossing west of where the accident occurred; that he sounded two long and two short blasts, which is the signal for a public crossing; that the deceased did not appear to have heard the sounding of this signal; that the witness then slowed down the speed of his train, and, when he had reached a point about 900 or 1,000 feet from the deceased, he repeated the first signal given. The engineer testified that upon giving the second signal the deceased stepped off the track, along by the left side, and stopped in the clear; that the engine obstructed his view of the deceased when he had approached to about 200 feet of the latter, and that he did not see the deceased again until after the engine had collided with him. The fireman testified that when the engineer gave the second signal he understood the same to be a road crossing signal, and immediately went to his place on the left side of the engine to watch the crossing for automobiles; that he saw the deceased standing by the track. The answer of the fireman in relation to the distance the deceased was standing from the track is in the following language:

"Q. How far from the engine would he have been when the engine passed him, if he had stood in the same place where he was when you saw him first? A. Maybe ten or twelve inches—may be not quite that far."

It will be observed that the fireman was estimating the distance that the deceased would clear the engine from a point some 200 feet distant. The fireman further testified that the deceased turned in an easterly direction, walking along the outside of the rails on the left side of the track. This testimony placed the deceased in a position where he would likely be struck by the approaching engine. The fireman testified that he immediately warned the engineer at about the same time the engine collided with the deceased, and ran to a point some 500 or 600 feet beyond the place of the accident before the train came to a stop.

The fireman testified that the signals given by the engineer did not cause him to believe that any person was on the track; that the signals as given were for a public crossing. One of the witnesses for the defendant testified that a danger signal consisted of a series of short, rapid blasts of the whistle. None of the employes who were witnesses for the defendant testified that any signals were given other than public road crossing signals until the back-up signal was given after the collision.

There appears to be a conflict between the testimony of the engineer and the fireman in a material respect in relation to the accident. The engineer testified that he was 900 or 1,000 feet from the deceased when he gave the second signal. The fireman testified that he went to his seat at the sounding of the second signal, as he believed the same to be a public road crossing signal. He saw the deceased standing by the railway track on the left side, and the train was then 200 feet from the deceased. There is a discrepancy as to the distance the train was from the deceased at the time the second signal was given, as between the evidence of the engineer and the fireman. The testimony of the engineer placed the train about 900, or 1,000 feet distant from the deceased at the time the second signal was given, while the testimony of the fireman placed the train about 200 feet, or a little more, from the deceased.

The testimony of certain witnesses of the plaintiff was to the effect that they heard the crossing signal first given as far as a mile west of where the accident occurred, and that the next signal was given at about the time the train stopped.

The testimony of the plaintiff showed that the hearing and eyesight of the deceased were good. The testimony did not show that the deceased was laboring under any physical infirmity that interfered with his normal, everyday actions.

One of the witnesses for the defendant testified to the effect that a danger or alarm signal, consisting of short, rapid blasts, which is given to warn persons upon the track of the approach of a train, was not given to the deceased. He testified that only public road crossing signals were given, which must have impressed the jury. The further fact that each of the signals, as testified to by the engineer, were given in the neighborhood of a public road crossing, also must have left its impression with the jury. The engineer testified that upon giving the second signal the deceased turned and looked towards the train, as he stepped from between the rails to the outside of the

rails. The fireman testified that when he first observed the deceased he was standing ten or twelve inches from the ends of the ties on the left side of the track, looking toward the approaching train. But the jury must have weighed this testimony in the light of the testimony of the two employes, to which we have already referred. The jury may have concluded that the employes were mistaken as to their conclusion that the deceased turned towards the train. The deceased naturally would have turned his side towards the approaching train in going at right angles from the center of the track, but this would not necessarily mean that he saw the approaching train. The jury, no doubt, was influenced in relation to the latter testimony by the testimony of the railway's physician, who attended the deceased shortly after the accident. The physician testified that the deceased was returned to Bridgeport after the accident and taken to a hotel. The doctor testified that while he was dressing the wounds of the deceased, the latter was conscious at times, or, rather, in a semi-conscious state; that he inquired of the doctor some two or three times as to what struck him, showing that the deceased had not been aware of the approaching train. This testimony was brought out by the defendant. The jury, no doubt, considered this testimony in connection with that of the engineer and the fireman, in relation to their claim that the deceased turned towards the train as he stepped from the track.

James Peck, a witness for the plaintiff testified that on the day of the accident he was working in his field some 200 yards west of the point where the accident occurred; that he observed the train when it passed him and saw the fireman on said train; that at that point the fireman was standing back on the coal tender and was looking west, the opposite direction from where the accident occurred.

The appellant contends that the deceased stood in a place of safety along by the track, before he turned and started walking towards the east. This contention is based upon the statement of the engineer that he stood in the clear when he got off the track. If the contention of the appellant was true, then, under the fireman's testimony, that the train was 200 feet away, it would relieve the railway of liability for the accident, as the proof of the engineer was that the train could not be brought to standstill in a distance of less than 450 or 500 feet. However, on the other hand, the testimony of the fireman is, that when the second signal was given he mounted the fireman's seat, saw the deceased standing and then turned to walk in an easterly direction along by the track. The testimony of the engineer placed the train approximately 900 or 1,000 feet from the deceased when the second signal was given.

If we take the engineer's testimony, that he was some 900 or 1,000 feet distant when the second signal was given, together with his testimony that the train could be brought to a standstill in some 450 or 500 feet, then the evidence of the two employes, taken together, made a question of fact to go to the jury as to whether ordinary care was exercised for the safety of the deceased. The fireman testified that when the deceased turned to start east along by the track, he passed into the danger zone. We may here observe that it is not for the fireman or the engineer to say that the deceased was in a place of safety at the time he stepped to the left side of the track and stood, momentarily, before he turned and started the journey east. It was a question of fact for the jury to determine, from all the evidence, as to whether the deceased stood in a place of safety on the outside of the rails. The jury may have doubted the ability of the fireman to determine that the engine would clear the deceased ten or twelve inches—perhaps less—when the latter stood 200 feet distant from the engine, while the train was moving at the rate of 25 or 30 miles an hour. The jury must have concluded that an ordinarily prudent man would not have passed the deceased with an engine and train at a speed of 25 or 30 miles an hour, when the best judgment of the employe was that deceased, some 200 feet distant, would not clear the engine more than ten or twelve inches and perhaps less. The jury must have concluded from all the evidence that the place of the deceased as he stood by the rails just before starting east continued to be dangerous for his safety. If so, the dangerous situation of the deceased continued from the time he was first observed by the engineer a half mile away until the collision occurred. The jury, by its general finding in favor of the plaintiff, resolved this issue in favor of the deceased, and we think there is sufficient competent testimony to support the finding.

The plaintiff in error has cited the cases of M., K. & T. Ry. Co. v. Gilbreath, 49 Okla. 681, 154 Pac. 539; C., R. I. & P. Ry. Co v. Barton, 59 Okla. 109, 159 Pac. 250, and other cases, as controlling in this appeal. In the Gilbreath Case, and other cases cited, it was undisputed that the injured parties

stood in a place of safety, and the evidence in the cases disclosed that the injured parties passed from the place of safety into the danger zone at a time when the railway's employes were unable to bring the train to a stop before colliding with such persons.

If the deceased was observed in a place of danger, as found by the jury, it was the duty of the engineer and fireman to use reasonable care commensurate with the dangers to avoid striking the deceased. A breach of this duty would cause the appellant to be liable for the damages suffered by the plaintiff. Atchison, T. & S. F. Ry. Co. v. Baker, 21 Okla. 51, 95 Pac. 433; St. Louis & S. F. Ry. Co. v. Clark, 42 Okla. 638, 142 Pac. 396; St. L. & S. F. Ry. Co. v. Bryan, 113 Okla. 39, 237 Pac. 613.

The rule of this court is that a judgment resting upon the verdict of a jury in the trial of a law action will not be reversed upon appeal, if there is any competent evidence which reasonably tends to support the verdict. Elson v. Walker, 80 Okla. 237, 195 Pac. 899; Mounts v. Boardman Co., 79 Okla. 90, 191 Pac. 362.

The railway company appears to stress the fact that the jury acquitted the fireman of liability, as showing that the plaintiff in error is not liable. The point would be well made, if the engineer had not been involved in the accident, as testified to by the witnesses, and the injury resulting from said accident being predicated upon the alleged negligence of both the fireman and engineer, employes in charge of the train. Chicago, R. I. & P. Ry. Co. v. Austin, 43 Okla. 698, 144 Pac. 1069; Chicago, R. I. & P. Ry. Co. v. Reinhart, 61 Okla. 72, 160 Pac. 51.

The appellant makes the further point that the plaintiff did not offer sufficient proof to enable the jury to determine the damages, if any, suffered by the plaintiff. The evidence disclosed that the deceased was about 81 years old at the time of his death; he was hale, hearty, and in good physical condition for a man of his age. He was walking from his son's home, a distance of about six miles to his home on the day of the accident. The evidence shows that he owned a couple of farms, and looked after the leasing and management of the same; that he was able to do the chores about the home, tended and cultivated a small plot of ground. The widow of the deceased testified in the cause, and the jury had the opportunity of observing her physical condition. Her age was shown as about 79 years. She testified that the physical condition of her husband was good for a man of his age, and that he did the chores about the home, and was able to cook meals for himself and witness when the latter was sick. The jury was given the age of the deceased and an idea as to his physical condition. It was for the jury to determine from all the evidence the probable life expectancy of the deceased, and his reasonable earning capacity. Weleetha Cotton Oil Co. v. Brookshire, 65 Okla. 293, 166 Pac. 408; Blunt v. C., R. I. & P. Ry. Co., 70 Okla. 149, 173 Pac. 656.

The action was instituted by the personal representative of the deceased for the use and benefit of the widow and next of kin, as provided by statute. The evidence showed that the deceased left his widow and several adult children. The evidence does not show that any of the adult children were dependent upon the deceased for support. The next of kin, who are entitled to the fruits of the judgment, is not involved in this appeal. This question will arise when distribution is made of the fruits of the judgment.

The petition of the plaintiff charged the appellant with liability for the death of the deceased under the last clear chance doctrine. The issue as made by the allegations, and the proof as to liability upon the doctrine of last clear chance, were submitted to the jury on proper instruction. We have examined the instructions carefully and conclude that the issues were fairly submitted to the jury. We think that the evidence is sufficient to support the verdict in favor of the plaintiff, and that all issues were fairly tried in the cause.

Therefore, the judgment ought to be, and is affirmed.

By the Court: It is so ordered.

Note.—See under (1) 33 Cyc. p. 855; anno. 69 L. R. A. 554; 22 R. C. L. p 963: 4 R. C. L. Supp. p. 1480; (2) 33 Cyc. p. 855; anno. 55 L. R. A. 418: 22 R. C L. p. 964. (3) 39 C. J. p. 1368 §1602. (4) 4 C. J. p. 1129 §3122.