ST. LOUIS-S. F. RY. CO. v. EAKINS et al.

No. 18394.   Opinion Filed Dec. 17, 1929.

Rehearing Denied Feb. 18, 1930.

Commissioners' Opinion, Division No. 1.

E. T. Miller and Cruce & Franklin, for plaintiff in error.

Fred E. Suits, C. E. Hall, Eldon J. Dick, and John H. Todd, for defendant in error.

LEACH, C. This action was commenced by the defendant in error, Mary A. Eakins, hereinafter referred to as plaintiff, against the St. Louis-San Francisco Railway Company and its employee, Peter B. Cross, a railway locomotive engineer, to recover damages for and on behalf of herself and children, for the alleged wrongful death of the husband of plaintiff, resulting from a collision between a truck driven by the deceased and a passenger train operated by the defendant at a highway grade crossing on defendant's railway track. A verdict and judgment were entered in the cause for plaintiff for the sum of $7,500 against the railway company alone, from which it prosecutes this appeal and assigns numerous errors as grounds for reversal. The railway company will be hereinafter referred to as defendant.

The first proposition presented and argued by the defendant railway company is that no question of liability was presented to the jury except that based upon the doctrine of respondeat superior, and since the jury exonerated the engineer, then the verdict against the company cannot be sustained, and the court erred in denying its motion for judgment notwithstanding the verdict.

In support of the contention, it cites Parker v. Luse, 97 Okla. 101, 223 Pac. 122;

Chicago, R. I. & P. Ry. Co. v. Austin, 43 Okla. 698, 144 Pac. 1069, and other cases from this and foreign courts holding in accord with the cases mentioned.

Under the record in the instant case, we do not find the cases cited to be controlling or sustaining the contention that there was error in the action of the court in denying the motion for judgment notwithstanding the verdict. It does not necessarily follow that, because a verdict is rendered in favor of an employee and against the principal or the losing party be entitled to a new trial, that such party is likewise entitled to judgment notwithstanding the verdict. It is only in cases where the special findings of fact or the pleadings warrant that a party is entitled to judgment notwithstanding the verdict. There were no special findings of fact in the instant case. It is alleged in the concluding paragraph of plaintiff's petition, "that the deceased's injuries and death, aforesaid, were directly caused by the negligence of the defendant and each of them, acting jointly and concurrently in the following particulars, to wit:

"(a) In negligently and carelessly operating and running said locomotive and train of cars at a high, reckless, unsafe and unreasonable rate of speed, to wit, in excess of 45 miles per hour, contrary to law, the provisions of the statutes of the state of Oklahoma, and in total disregard for the safety of the public using said highway.

"(b) In negligently and carelessly fixing, establishing and maintaining a schedule for the speed of trains at said dangerous and much traveled crossing aforesaid at approximately 40 miles per hour"

—and thereafter follows several other enumerated acts of alleged negligence, such as failing to ring the bell and give proper signals in approaching the crossing, and in failing to observe certain rules prescribed by the railway company, which latter appear to be primarily acts of negligence on the part of the engineer alone.

We consider the rule, reasoning, and authorities set out in the case of St. Louis-S. F. Ry. Co. v. Bell, 134 Okla. 251, 273 Pac. 243, applicable and controlling in the instant case on the first proposition advanced. It is said in the syllabus of that case:

"(1) In the absence of special findings, the court is without jurisdiction to enter judgment notwithstanding the verdict, unless same is warranted by the pleadings. The court is not authorized to render such judgment because there is an entire failure of evidence to justify the verdict in favor of the prevailing party, or because the evi-

dence shows that, as a matter of law, the court should have directed a verdict in favor of the losing party.

"(2) Herein the averments of the petition were sufficient to admit of proof that the appellant railway company, by and through some of its agents other than the conductor, was guilty of negligence proximately contributing to appellee's injury, and we assume, in favor of the general verdict, that such proof was made; therefore, we hold the motion non obstante veredicto was properly overruled."

Since plaintiff's petition specifically charges the railway company with "negligently and carelessly fixing, establishing, and maintaining a schedule for the speed of trains at said dangerous and much traveled crossing aforesaid at approximately 40 miles per hour," an alleged primary act of negligence on the part of the railway company when considered alone or in connection with the other alleged acts of negligence, we consider it sufficient to withstand defendant's motion for judgment notwithstanding the verdict, and no error is shown in the action of the trial court in denying the motion under the record in the case and the rule advanced in the above quoted case.

It is next contended: "The verdict of the jury against the defendant is not supported by sufficient evidence." Under which it is argued that, since the only allegation of primary negligence against the railway company was that wherein the railway company was charged with being negligent and careless in fixing, establishing, and maintaining a schedule for the speed of its train, as hereinbefore set out, the jury must, in view of their verdict exonerating the engineer, have based its verdict against the railway company upon such alleged negligence alone, and it is stated and contended by defendant that such alleged primary and specific negligence and issue arising thereon was by the trial court, in its instruction 10a, partially copied in the brief, specifically and expressly withdrawn from the consideration of the jury. The entire instruction 10a, under which it is contended by the defendant that the trial court withdrew the question from the jury, is as follows:

"You are instructed in this case that the evidence shows the deceased was struck by train No. 10, a fast train from Oklahoma City to St. Louis, Mo. Therefore, the mere fact that the defendant railway company operated a fast train over its track is no negligence on its part, when taken alone, and will not justify a verdict against said railway company at your hands. But, in de-

termining this question, you may take into consideration the speed at which the train was being operated at the time of the accident, the conditions prevailing at the crossing and west on said highway, and all the facts and circumstances surrounding the case."

When the instruction is considered as a whole, as we must so consider it, we are unable to agree with the contention that such instruction withdrew from the jury the consideration of such alleged negligence on the part of the railway company.

It is further urged under the second proposition advanced, that there was no evidence upon which the jury could determine that the speed as fixed in the schedule prepared by the company was excessive; it being further stated that the company only adopted the schedule and fixed a period of time for the movement of the train between the initial or starting point and the terminus of the run, and left it discretionary, in the exclusive judgment of the engineer, as to the rate of speed of the train at any particular point on the line, and contended that it, railway company, could not be adjudged negligent unless the fixed schedule as a whole was excessive.

We are unable to agree with such contention. It was only necessary for the jury in order to determine whether the railway company was negligent and liable, as we view it, to find and determine whether the train was being operated at the time of the collision at an excessive or negligent rate of speed under the direction of the company as expressed through its established schedule as furnished its employee, the engineer, and that deceased was not guilty of contributory negligence.

The defendant Cross testified that he was the engineer in charge of the train at the time of the collision and answered in response to the question:

"Q. What rate of speed was your train going at the time you approached and crossed the crossing on the 3rd day of August, 1925? A. We were running approximately 50, 55 miles an hour."

He further testified that the schedule or rate of speed for the train as fixed and furnished him by the officials of the company on his run between Oklahoma City and Sapulpa was 39.1 miles per hour, which included all necessary stops of the train. He was asked the question, referring to the rate of speed of the train at and immediately prior to the collision:

"Q. Was that the usual speed at that place? A. Yes, sir. Q. At the time of the accident was the train on time? A. Just about, yes,"

The witness was asked the following question which had reference to the stretch of railway track immediately leading up to the scene of the accident:

"That's where you make up your speed that you lose in getting out of the yards and making the upgrade, is it not? A. On any straight track where we can get it up, where we make it. Q. That's one of the places where you make up lost time on these other grades? A. Yes, sir."

He further testified:

"Q. The schedule that you were maintaining and was being maintained on the 3rd day of August, 1925, was promulgated and fixed by whom? A. Well, sir, I think they got all the superintendents on the system together and got up that schedule and figured it out themselves. Q. That is the schedule that you were attempting to maintain or maintaining on the 3rd day of August, 1925, in running No. 10 frmo Oklahoma City to Sapulpa? A. Yes, sir. Q. The time this accident occurred at this particular crossing? A. Yes, sir. Q. You are required, are you not, by the railway company, to maintain that schedule, that average of miles between given points, Oklahoma City and Sapulpa? A. Yes. Q. If you do not maintain it upgrade, out of yards and places of that kind, then you must maintain it at places where there is more expediency to do so, isn't that true? A. You mean I must pick up lost time? Q. Yes. A. Yes, sir. Q. That is a requirement of the Frisco Railway Company? A. Yes. Q. That is, you mean you pick it up if you can conveniently? A. Yes."

The fireman of the train testified that, in order to make the schedule promulgated by the railway company, it was necessary to make a greater rate of speed at some places than at others.

"Held, that whether there was excessive speed, and, if so, whether under facts and circumstances of the case, such speed constituted negligence, is a question of fact to be determined by the jury." Chicago, R. I. & P. Ry. Co. v. Barton, 59 Okla. 109, 159 Pac. 250.

"The general rule is a rate of speed that would be entirely safe under some conditions may be recklessly dangerous under other conditions, and it is generally held it is for the jury to determine, considering all the facts and circumstances, whether or not the speed which the train was running was an act of negligence." St. Louis-San Francisco Ry. Co. v. Rundell, 108 Okla. 132, 235 Pac. 491.

"(1) If the negligent speed of a train was maintained by the express direction of the defendant employer, it would be negligent, and its negligence would concur with that of the defendant engineer who obeyed the instruction, and the right to recover against defendants would be joint; if, in such case, the verdict is based on the fact that the responsibility of defendants was joint, defendant company would not be prejudiced by failure of the jury to find against the defendant engineer.' St. Louis-S. F. Ry. Co. v. Simmons, 116 Okla. 126, 242 Pac. 151.

In the St. Louis-S. F. Ry. Co. v. Simmons Case, supra, reference is made to the case of Benson v. Southern Pacific Co., 177 Cal. 777, 171 Pac. 948, in which latter case it is stated in the syllabus:

"(2) If the negligent speed of the train was maintained by the express direction of defendant employer, it would be negligent, and its negligence would concur with that of defendant motorneer who obeyed the instruction, and the right to recover against defendants would be joint."

It is also stated in the body of the opinion:

"In the instant case, evidence was introduced on the trial tending to prove that the train was being operated on schedule time and at a rate of speed predetermined by the defendant corporation. If the verdict was based upon that view of the case, the responsibility of the parties defendant being joint, the defendant company would not be prejudiced by the failure to find against its codefendant. All intendments being in favor of the verdict, it must be considered that the jury based the same upon a finding of joint liability, unless there is something in the record which prevents that conclusion."

See, also, Chicago, R. I. & P. Ry. Co. v. Pedigo, Adm'r, 123 Okla. 213, 252 Pac. 1095.

In the instant case we are of the opinion that there was sufficient evidence from which the jury might have found that the schedule as fixed by the superior officials of the railway company necessitated, directed, and required the engineer to run and operate the train at the rate of speed it was making at the time of the accident in order to maintain the established schedule, and that such speed was excessive and negligent under the particular circumstance and facts shown at the time of the accident. Where there is any evidence reasonably tending to support the verdict of the jury and the judgment thereon in a law action, this court is not authorized to reverse the same upon appeal. Under such rule and the holdings in the St. Louis-S. F. Ry. Co. v. Bell and St. Louis-S. F. Ry. Co. v. Simmons

Cases, supra, and others cited, we conclude there was sufficient evidence under the law to sustain the verdict of the jury.

The next proposition advanced is that "the court erred in its instructions to the jury," which is divided into several sub-divisions. Under the first it is specifically urged and argued that the court erred in defining the issues to the jury, citing Schaff, Rec., v. Richardson, Adm'x, 120 Okla. 70, 254 Pac. 496; Lambard-Hart Loan Co. v. Smiley, 115 Okla. 202, 242 Pac. 212. The principal objection made to the statement of the issues in the court's instructions relates to the reference therein of certain rules promulgated by the defendant railway company defining certain duties of its employees in the operation of its trains, which rules, it was alleged by plaintiff, were not observed by the defendant Cross, the engineer, some of which rules were not proven or in issue. A violation of such rules was not alleged as primary negligence on the part of the railway company. The rules indicated a desire and effort on the part of the railway company to avoid accidents, and were directions to its employees to use care in the operation of its train. In view of the verdict of the jury exonerating the engineer, we do not think the reference to such rules in the statement of the issues in the instructions was prejudicial to the defendant railway company. The statement of the issues as raised by pleadings of the respective parties as set out in the instructions was more extensive than necessary under the evidence, and should have been more concise. However, in the recent case of St. Louis-S. F. Ry. Co. v. Routh, 133 Okla. 168, 271 Pac. 835, a somewhat similar contention to the one here presented was therein made, and the same cases were relied upon, their application to the question was discussed, and the following rule was announced in that case.

"Where the trial court, in stating the issues to the jury, quotes extensively from the pleadings, and, substantially, though not accurately, states the issues, and opportunity is given counsel to inspect the instructions prepared by the court, and is given opportunity to prepare instructions, and counsel fails to submit any instruction defining the issues, a case will not be reversed for failure of the court to accurately define the issues involved."

The defendant in the instant case made formal objection to the statement of the issues and requested 23 separate paragraphs of instructions, yet none of the requested instructions related to or were directed to a statement of the issues. The instructions of the court on the law of the case were principally directed to the issues upon which some evidence was submitted. Under the above rule announced in the case of St. Louis-S. F. Ry. Co. v. Routh, supra, we fail to find reversible error in the statement of the issues by the trial court.

Complaint is next made that the court erred in its definition of "contributory negligence." The court in instruction No. 12 said:

"By the term 'contributory negligence,' as the same is used in these instructions, is meant the failure to exercise a reasonable degree of care and caution for one's own safety, and which failure contributed to and was the proximate cause of the alleged accident and the resultant injuries to plaintiff's decedent."

Complaint is made of the instruction, also No. 19, on the ground that it tends to convey the idea that the deceased must have been guilty of such negligence as to constitute the proximate cause of his injury before the jury could find him guilty of contributory negligence.

The court in its instruction No. 19 advised the jury that the defendant alleged in their answer that the deceased himself was careless and negligent in approaching and attempting to cross the railway track, which contributed to and was the proximate cause of the injuries sustained and the subsequent death, and the jury was charged therein that if the defendants established, by a preponderance of the evidence, that the plaintiff's decedent failed to exercise a reasonable degree of care and caution in the crossing of said railway track, which contributed to and was the proximate cause of the accident and injury which resulted in his death, then the plaintiff could not recover notwithstanding that they further find that the defendants or either of them were guilty of carelessness and negligence in the operation of said engine and train. The defendant criticises the latter instruction upon the same grounds as No. 12 and further says it incorrectly states the pleadings and answer of defendant relative to such negligence being the proximate cause of the injury. Such latter criticism is not, as we view it, entirely warranted, because it is stated in the answer of the railway company, in the second paragraph thereof, that the injury of the deceased was due to his own negligence and carelessness, while in the third paragraph of its answer, it alleges that if it was negligent, which is not admitted, that

the negligence and carelessness of the deceased contributed to that of the defendant and without which said injury would not have been sustained.

The defendant requested the following instruction, and its refusal is presented as error:

"You are instructed that contributory negligence, as used in these instructions, means the want of ordinary care on the part of the deceased—that is to say, the want of such care as an ordinarily prudent person would have exercised while approaching a railroad crossing similar to the one under consideration, **which want of care, either by itself, or concurring with the negligence, if any, of the defendants,** contributed to deceased's injuries."

Defendant's requested instruction is not entirely free from the defect found in the instruction given by the court, because the words therein, "which want of care, either by itself, or concurring with the negligence, if any, of the defendants," would indicate and imply that the want of care on the part of the deceased "by itself," standing or considered alone, would constitute contributory negligence. Such is not the rule, as is to be seen from the following definition:

" 'Contributory negligence' is an act or omission on the part of the plaintiff amounting to want of ordinary care which, concurring or co-operating with the negligent act of defendant is the proximate cause of the injury complained of, and necessarily presupposes negligence on the part of the defendant." St. Louis-San Francisco Ry. Co. v. Bryan, 113 Okla. 39, 237 Pac. 613.

" Contributory negligence is the negligence of the person on account of whose injury the action was brought, amounting to a want of ordinary care, when combined with a proximate connection between this want of care and the injury complained of." Missouri, K. & T. Ry. Co. v. Smith, 97 Okla. 152, 223 Pac. 373.

While the instruction given on contributory negligence is not entirely accurate in that it is to some extent incomplete, as usually given, for failure to refer to defendant's negligence, yet, we do not believe the jury failed to understand that if the negligence, if any, of the deceased contributed to his injury, then the plaintiff could not recover, nor do we think the defendant substantially prejudiced by the instruction when the same is considered with the other instructions given. We find no reversible error in the instructions, or in rejecting the one requested by defendant. St. Louis-S. F. Ry. v. Routh, supra.

It is next contended that the court erred in giving instruction No. 13, which, in substance, advised the jury that it was the duty of the defendants to exercise ordinary care to observe travelers upon the highway who were about to cross the railway track, and in running and handling said train, to exercise that degree of care and prudence which an ordinarily careful and prudent person engaged in like business would have exercised under like circumstances. The objection and criticism made to the instruction is that it failed to define the duties resting upon the defendants, and left it up to the jury to decide what the defendant should have done or the duties resting upon the parties. The court, in instruction No. 5 advised the jury on the meaning of the term "ordinary care," to which no objection was made. In the case of Seay v. Plunkett, 44 Okla. 794, 145 Pac. 496, complaint was made to an instruction which contained the terms "reasonable skill and care," "reasonable diligence," and similar expressions, because such terms were used without any explanation as to the meaning thereof, and the court there said:

"This contention is without merit, for the reason that in paragraph 14 of the court's charge, he tells the jury that by the term 'reasonable care,' the law means such a degree of care as an ordinarily prudent person would exercise under similar circumstances, or in the same situation. Whether this definition makes the meaning any clearer, or whether or not it sheds any additional light on the word 'reasonable' itself, we cannot say, but it is the definition usually given by the courts, and is equally as full and lucid as the definitions given in the cases cited by plaintiffs in error."

In other paragraphs of the instruction, the jury was advised of the minimum care or statutory duty of the defendant railway company and its servants to ring a bell and give whistle signals at crossings, and of the duty to exercise such other precautionary measures as are reasonably necessary in crossing public highways, having due regard to the nature of said crossing.

"Neither the Legislature nor the Corporation Commission can arbitrarily determine in advance what would constitute ordinary care or reasonable prudence in a railroad company at a crossing. Each case must stand upon its own merits, and the question is ordinarily one for the jury to determine." St. Louis-San Francisco Ry. Co. v. Rundell, supra.

It is next contended that the court erred in defining the duties which rested upon the defendant railway company as compared

262

with the definition of the duties which rested upon the deceased. It is true that the court occupied more space in defining the duties of the defendant than it did in defining that of the deceased, and may have to some extent unnecessarily repeated, but we do not find wherein the court incorrectly stated the obligations or duties of either party, and we are not able to say and it does not affirmatively appear that the court unduly stressed the obligations of the defendant in comparison with the duty of the injured to the extent of prejudicing the jury thereby against the defendant.

It is next urged that the court erred in refusing to instruct the jury upon the duties resting upon the deceased as defined by the state stop law. The defendant requested certain instructions wherein the jury were advised that it was the duty of the deceased to stop, look and listen before going on the railroad track at a public crossing. A similar question was before this court and decided in a recent opinion in the case of St. Louis-S. F. Ry. Co. v. Thompson, 139 Okla. 142, 281 Pac. 565, wherein it was said:

"Under the provision of section 6 of art. 23 of the Constitution, it cannot be said, as a matter of law, that it is the duty of a person approaching a railway crossing to stop before going thereon, and this rule was not changed by the adoption of section 1, chap. 101, Session Laws 1925, making it unlawful for any person, driving or causing to be driven any motor driven vehicle across or over any railway track, to cross such track without first coming to a complete stop, when considered in connection with section 2 of the same act, which provides that the provision of the act shall not be taken or construed to in any way change or modify the existing laws in connection with the trial of actions growing out of grade crossing accidents."

In view of the ruling and discussion of the question in that case, we do not deem it necessary to further discuss it here, and we find no error in the rejection of the requested instruction.

It is next contended that the court should have given defendant's requested instruction No. 19, wherein the jury were to be instructed that if they found the deceased saw the approaching train and could then have stopped his automobile at a place of safety, but failed to do so, and attempted to beat the train across the track, the plaintiff could not recover although they found the railway company guilty of negligence. There was testimony introduced by the defendant to the effect that a witness, who was riding with the driver of the truck, the deceased, at the time of the collision, made a statement shortly thereafter to the effect that he called the attention of the driver to the approaching train, and the driver remarked, in substance: "I can beat it across." Such statement was denied by the person purporting to have made it. Defendant in support of its contention cites St. Louis, I. M. & S. R. Co. v. Gibson, 48 Okla. 533, 150 Pac. 465, and Chicago, R. I. & P. Ry. Co. v. Barton, 59 Okla. 109, 159 Pac. 250, and quotes certain paragraphs from the syllabus thereof. The facts in those cases were apparently undisputed, or of such a character that but one conclusion could be drawn therefrom, and the court there held in effect that the facts failed to show primary negligence on the part of the defendant, that the injury was unavoidable by reason of the conduct of the injured party. As was said in the case of Clark v. St. L. & S. F. R. Co., 24 Okla. 764, 108 Pac. 361:

"In all lawsuits, and particularly personal injury cases, a slight difference between the exact facts of cases claimed to be analogous makes a wide difference in the application of the law of one case to the facts of another. Every case therefore must depend more or less upon its own circumstances."

We are of the opinion that the particular evidence relied upon by the defendant in the instant case does not bring it within the rule announced in the cases cited and relied upon by defendants, but they come within the rule announced in the case of Wichita Falls & N. W. R. Co. v. Woodman, 64 Okla. 326, 168 Pac. 209, wherein it was said:

"The defense of contributory negligence is at all times a question of fact for the jury, under article 23, sec. 6, Williams' Annotated Constitution, and the court should not instruct the jury that a certain fact or circumstance or a given state of facts or circumstances do or do not constitute contributory negligence."

"The court should define the meaning of the term 'contributory negligence,' as used in the Constitution, and leave it to the jury to say whether the plaintiff's negligence had or had not contributed to the injuries complained of."

"In a suit for personal injuries, the question whether defendant's negligence is the proximate cause of the injury sustained should be left to the jury, where the evidence is conflicting, or where men of ordinary intelligence might differ as to the effect of the evidence on a point. The court should define proximate cause to enable the jury to determine whether the negligence alleged was the proximate cause, since, in order for negligence to create liability, it

must be the proximate cause of the injury." Missouri, K. & T. Ry. Co. v. Perino, 118 Okla. 138, 247 Pac. 41.

In the case of Mascho v. Hines, Director General of Railroads, 91 Okla. 295, 217 Pac. 856, the trial court instructed the jury that the railway crossing in question was of itself a warning of danger and that it was the duty of the plaintiffs agent in charge of a truck to approach the crossing carefully and use reasonable care to avoid accident, such as an ordinary man would exercise, and if he failed to do so, he was guilty of contributory negligence and plaintiff could not recover damages although the defendant may have been guilty of negligence, which instruction was held to be bad because it invaded the province of the jury, and held that it was error for the court to instruct the jury that a certain state of facts or circumstances constitute contributory negligence, but such question should be left to the jury under proper definition. See, also, Missouri, K. & T. R. Co. v. Wolf, 76 Okla. 195, 184 Pac. 765. The requested instruction, in effect, would have advised the jury that if they believed and found a certain state of facts, then the deceased would have been guilty of negligence, either primary or contributory, and the plaintiff by reason thereof could not recover, although the railway company also be guilty of negligence. Under the ruling and authorities of the last above-quoted cases, such instruction would have been an invasion of the province of the jury, and was unwarranted under the particular evidence. The trial court instructed the jury upon contributory negligence, proximate cause, and the relation of negligence thereto, ordinary care, and in instruction No. 6 said:

"Under the law every one is responsible, not only for the result of his willful acts, but also for any injury occasioned to another by want of ordinary care or skill in the management of his property or person, except so far as the person injured and claiming damages as the result of such injury has willfully, or by the want of ordinary care, brought the injury upon himself."

We are of the opinion that the instructions given by the court sufficiently advised and presented the question and issue raised by the particular evidence referred to and relied upon by the defendant, and no error is shown in the failure of the trial court to give the requested instruction.

Defendant next contends that there was error in permitting the plaintiff to cross-examine and elicit from a witness certain testimony respecting other accidents at the particular grade crossing. Counsel for plaintiff had previously been cross-examining the witness as to his ability to remember signals given by the train as it approached the crossing at the time of the collision, and after he concluded such examination the counsel for the defendant upon redirect examination asked the witness:

"Q. You say you noticed it whistle more than usual on the occasion? A. Yes, sir. Q. Every time a train passes there you don't have an accident, do you? A. No, sir."

Whereupon counsel for plaintiff propounded questions and elicited answers thereto as follows:

"You frequently have had accidents there at that crossing, haven't you? Defendants object; not proper cross-examination. Overruled. Exceptions. Q. There have been accidents occurred at that crossing that you know of or heard of, haven't there? A. Yes. Q. How frequent are the accidents at that crossing? Defendants object: irrelevant, incompetent, immaterial, prejudicial. Overruled. Exception. A. Well, I don't know; every year or two; something like that."

We do not determine whether the questions and testimony concerning other accidents at the crossing were proper and admissible under the issues or whether sufficient and timely objection was made thereto. Ordinarily, the opposite party may cross-examine upon a matter brought out in chief. In view of the extent of the examination and the fact that counsel for defendant first inquired of witness concerning other accidents at the crossing, thereby in a manner inviting the error, if any, of which he now complains, we do not believe he should be permitted to successfully base error thereon, and we so hold. Dudley v. Meggs, 54 Okla. 65, 153 Pac. 1121; Smith v. Morton, 70 Okla. 157, 173 Pac. 520; Rock Island Coal Mining Co. v. Galvin, 96 Okla. 95, 220 Pac. 832.

Finding no reversible error in the record, the judgment is affirmed.

BENNETT, TEEHEE, REID, and FOSTER, Commissioners, concur.

By the Court: It is so ordered.

Note.—See under (1) anno. L. R. A. 1916E, 828; 15 R. C. L. p. 607; R. C. L. Perm. Supp. p. 3962 (6) anno. 21 L. R. A. (N. S.) 794; 29 L. R. A. (N. S.) 924; 46 L. R. A. (N. S.) 702; 22 R. C. L. p. 1015; 4 R. C. L. Supp. p. 1484; 5 R. C. L. Supp. p. 1220; 6 R. C. L. Supp. p. 1347; 7 R. C. L. Supp. p. 760. See "Appeal and Error," 3 C. J. §756, p. 850, n. 24; 4 C. J. §2613, p.

703, n. 76; §2834, p. 853, n. 61; §3014, p. 1032, n. 36. "Judgments," 33 C. J. §113, p. 1183, n. 45. "Trial," 38 Cyc. p. 1650, n. 61; p. 1785, n. 90.